# EXHIBIT 10

Exhibit 10

SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISTRICT
_____

 In Re Eighth Judicial District Asbestos Litigation
_____

STATE OF NEW YORK
SUPREME COURT     :     COUNTY OF ERIE
_____

HUBERT A. PEACE and RHODA PEACE, his spouse

                                            Plaintiffs


-v-                                                    Index No. 802680/2013

ASBESTOS CORPORATION, LTD.,
COMMERCIAL CHEMICALS, INC.,
HEDMAN RESOURCES, LIMITED,
INSULATION DISTRIBUTORS, INC.,
McLAUGHLIN INSULATION, CO., INC.,
MEYERS CHEMICALS , INC.,
PFAUDLER, INC.,
SPECIAL ELECTRIC COMPANY , INC., Individually
         and as successor in interest, parent, alter ego
         and equitable trustee to
         SPECIAL MATERIALS, INC.,
         SPECIAL MATERIALS, INC.-WISCONSIN,
         SPECIAL MATERIALS, INC.-ILLINOIS,
         SPECIAL MATERIALS, INC.-OHIO,
         SPECIAL ELECTRIC COMPANY OFNORTH CAROLINA, INC.,
         SPECIAL ELECTRIC COMPANY OF FLORIDA, INC.,
         SPECIAL ASBESTOS COMPANY, INC.,
UNION CARBIDE CORPORATION,

                                            Defendants
_____


**<u>VERDICT SHEET</u>**

COURT'S
EXHIBIT NO. 1
IDENTIFICATION/EVIDENCE
DKT.#
DATE: 10/20/14
PENG40 800-631-6989

At least FIVE (5) jurors must agree on the answer to each question. It is not necessary, however, that the same five jurors agree on the answer to each question.  Jurors who agree on the answer should sign on the lines following. If all jurors agree, the foreperson need merely write UNANIMOUS on the first line following the answer.

JURORS, PLEASE NOTE: Answer the following questions in order beginning with Question "1".  Follow the instructions at the end of each question.

QUESTION 1. Did defendant , SPECIAL ELECTRIC COMPANY, INC.,  directly  sell asbestos fibers to plaintiff HUBERT A. PEACE'S  employer, Durez?

Yes_____          No___✓___

_Unanimous_____          _____

_____          _____

_____          _____

If Your Answer to  Question "1"  is "YES", Proceed to Question "2".

If Your Answer to  Question "1"  is "NO", Proceed to Question "3".

QUESTION 2. Was plaintiff HUBERT A. PEACE exposed to asbestos fibers from the direct sales of asbestos fibers from defendant SPECIAL ELECTRIC COMPANY, INC.  to plaintiff's employer, Durez ?

Yes_____          No_____

_____          _____

_____          _____

_____          _____

Proceed to Question "3".

QUESTION 3.  Did defendant,  SPECIAL ELECTRIC COMPANY, INC., sell asbestos fibers to

plaintiff HUBERT A. PEACE'S 's employer, Durez , as the agent of SPECIAL ASBESTOS

COMPANY, INC.?

                                                      Yes_____          No___✓___

_Gregory D. Kurtz_                    _MaryAnne Stevens_

_Carol Foster_                        _Daylo Paszkaty_

_Jamin Kennedy_                       _____

If Your Answer to  Question "3"  is "YES", Proceed to Question "4".

If Your Answer to  Question "3"  is "NO", Proceed to Question "5".


QUESTION 4. Was plaintiff HUBERT A. PEACE exposed to asbestos fibers supplied by

defendant  SPECIAL ELECTRIC COMPANY, INC. to plaintiff's employer, Durez , as the

agent of SPECIAL ASBESTOS COMPANY, INC. ?

                                                      Yes_____          No_____


_____              _____

_____              _____

_____              _____

-4-

Proceed to Question "5"

QUESTION 5. Was defendant , SPECIAL ELECTRIC COMPANY, INC., the alter ego of

SPECIAL ASBESTOS COMPANY, INC. ,  with respect to sales of asbestos fibers to plaintiff's

employer, Durez ?

Yes_____          No__✓___

Unanimous_____          _____

_____          _____

_____          _____

If Your Answer to  Question "5"  is "YES", Proceed to Question "6".

If Your Answer to  Question "5"  is "NO", Proceed to Question "7".

QUESTION 6. Did the actions of defendant  SPECIAL ELECTRIC COMPANY, INC., as the

alter ego of SPECIAL ASBESTOS, INC.  result in injury to plaintiff HUBERT A. PEACE?

Yes_____          No_____

_____          _____

_____          _____

_____          _____

Proceed to Question "7".

-5-

QUESTION 7.  Did defendant SPECIAL ELECTRIC COMPANY, INC. or SPECIAL ASBESTOS

COMPANY, INC. supply asbestos fibers to Durez , that plaintiff HUBERT A. PEACE was

exposed to,  without adequate warnings?

Yes___✓___    No_____

Unanimous_____      _____

_____      _____

_____      _____

If Your Answer to Question "7" is "YES" , Proceed to Question"8".

If Your Answer to Question "7" is "No" , Proceed to Question "9".


QUESTION 8. Was defendant SPECIAL ELECTRIC COMPANY, INC. or SPECIAL ASBESTOS

COMPANY, INC.'s failure to warn a substantial factor in causing injury to plaintiff HUBERT

A. PEACE?

Yes___✓___    No_____

Unanimous_____      _____

_____      _____

_____      _____

Proceed to Question "9".

QUESTION 9.   Was plaintiff HUBERT A. PEACE exposed to asbestos fibers supplied by

HEDMAN RESOURCES, LTD.?

Yes __✓__          No_____

_Unanimous_ _____          _____

_____          _____

_____          _____

If Your Answer to Question "9"  is "YES" , Proceed to Question"10".

If Your Answer to Question "9" is "No", but your Answers to Questions "7" and  "8" were "Yes", Proceed to Question "12".

If any of Your Answers to Question "9 " "is "No", and your Answers to Questions "7" and "8" were "No", Proceed No Further, Sign the Certificate on Page 15 and Report to the Court.

QUESTION 10.  Did defendant HEDMAN RESOURCES, LTD.  supply asbestos fibers to

which plaintiff HUBERT A. PEACE was exposed without adequate warnings?

Yes __✓__          No_____

_Unanimous_ _____          _____

_____          _____

_____          _____

If Your Answer to Question "10" is "YES" , Proceed to Question"11".

If Your Answer to Question "10" is "No", but your Answers to Questions "7" and  "8" were "Yes", Proceed to Question "12".

If any of Your Answers to Questions "10  " "is "No", and your Answers to Questions "7" and  "8" were "No", Proceed No Further, Sign the Certificate on Page 15 and Report to the Court.

QUESTION 11. Was defendant HEDMAN RESOURCES, LTD.'S failure to warn a substantial

factor in causing injury to plaintiff HUBERT A. PEACE ?

Yes__✓____        No_____

Unanimous

If Your Answer to Question "11" is "YES" , Proceed to Question"12".

If Your Answer to Question "11" is "No", but your Answers to Questions "7" and  "8" were "Yes", Proceed to Question "12".

If any of Your Answers to Question "11 "is "No", and your Answers to Questions "7" and "8" were "No", Proceed No Further, Sign the Certificate on Page 15 and Report to the Court.

QUESTION 12.   Were defendant SPECIAL ELECTRIC COMPANY INC.'S  actions ,

which caused plaintiff HUBERT A. PEACE'S  injuries,  taken with reckless disregard

for the safety of others?

Yes_____        No__✓____

_Unanimous_ _____    _____

_____    _____

_____    _____

Proceed to Question "13".

QUESTION 13.   Were defendant HEDMAN RESOURCES LTD'S  actions , which caused

plaintiff HUBERT A. PEACE'S injuries,  taken with reckless disregard for the safety of

others?

                                        Yes __✓__          No _____

_Unanimous_ _____    _____

_____    _____

_____    _____

Proceed to Question "14".

QUESTION "14".  State the amount,  if any,  awarded to plaintiff HUBERT A. PEACE

for pain and suffering, including loss of enjoyment of life,  from the  onset  of his

illness to today.

                                        $ _350,000.00_

_Unanimous_ _____    _____

_____    _____

_____    _____

Proceed to Question "15".

QUESTION 15.  State the amount, if any, awarded to  plaintiff  HUBERT A. PEACE'S

for pain and suffering, including loss of enjoyment of life,  from today for up to one year

he is expected to live.


$ _810,000.00_

Unanimous _____        _____


_____        _____


_____        _____


Proceed to Question "16".

QUESTION 16.    State the amount , if any, awarded to plaintiff, RHODA PEACE,

for the loss of her husband's services and society, as a result of his illness, from its

onset to today.


$ _155,000.00_

Unanimous _____        _____


_____        _____


_____        _____


Proceed to Question 17.

QUESTION 17.  State the amount , if any, awarded to plaintiff, RHODA PEACE,

for the loss of her husband's services and society, as a result of his illness, from its

today for up to one year he is expected to live.


$ _297,000.00_


Unanimous

_____        _____

_____        _____

_____        _____


Proceed to Question 18.

QUESTION 18.   Was plaintiff HUBERT A. PEACE  exposed to asbestos from

products, equipment or work activities of any of the following companies?

| COMPANY | YES | NO | VOTE- 5/6 MUST AGREE |
|---|---|---|---|
| Asbestos Corporation, Ltd. | ✓ | | |
| Buffalo Insulation | ✓ | | |
| Carey Canada | ✓ | | |
| Commercial Chemicals | | ✓ | |
| Johns-Manville | ✓ | | |
| McLaughlin Insulation | ✓ | | |
| Meyers Chemicals | | ✓ | |
| North American Asbestos Company | ✓ | | |
| Owens- Corning (Kaylo) | ✓ | | |
| Pfaudler, inc. | ✓ | | |
| Union Carbide Corporation | | ✓ | |
| Vermont Asbestos | ✓ | | |

Unanimous

_____       _____

_____       _____

_____       _____

If your answer is "YES" for all of the companies listed in Question " 18",  proceed to Question " 19 ".

 If your answer is "NO" for any entity listed in Question "18",  strike that company from the lists in Questions "19", "20 " and "21" by  drawing a line through it and do not consider that entity in answering  Questions  "19", "20" or "21".

QUESTION 19.  Were any of the following companies negligent  in manufacturing,

selling or supplying a product that contained or utilized asbestos, without adequate

warnings?

| COMPANY | YES | NO | VOTE- 5/6 MUST AGREE |
|---|---|---|---|
| Asbestos Corporation, Ltd. | ✓ | | |
| Buffalo Insulation | ✓ | | |
| Carey Canada | ✓ | | |
| Commercial Chemicals | | | |
| Johns-Manville | ✓ | | |
| McLaughlin Insulation | ✓ | | |
| Meyers Chemicals | | | |
| North American Asbestos Company | ✓ | | |
| Owens- Corning (Kaylo) | ✓ | | |
| Pfaudler, inc. | ✓ | | |
| Union Carbide Corporation | | | |
| Vermont Asbestos | | ✓ | |

Unanimous _____     _____

_____     _____

_____     _____

If your answer is "YES" for all of the entities listed in Question " 19" please proceed to Question " 20 ".

 If your answer is "NO" for any entity listed in Question "19" strike that entity from the lists in Questions "20" and "21" by drawing a line through it and do not consider that entity in answering Questions "20" or "21".

QUESTION 20 . Was the negligence of any of the following companies a substantial

factor in causing injury to plaintiff HUBERT A. PEACE ?

| COMPANY | YES | NO | VOTE- 5/6 MUST AGREE |
|---|---|---|---|
| Asbestos Corporation, Ltd. | ✓ | | |
| Buffalo Insulation | ✓ | | |
| Carey Canada | ✓ | | |
| ~~Commercial Chemicals~~ | | | |
| Johns-Manville | ✓ | | |
| McLaughlin Insulation | ✓ | | |
| ~~Meyers Chemicals~~ | | | |
| North American Asbestos Company | ✓ | | |
| Owens- Corning (Kaylo) | ✓ | | |
| Pfaudler, inc. | ✓ | | |
| ~~Union Carbide Corporation~~ | | | |
| ~~Vermont Asbestos~~ | | | |

Unanimous _____      _____

_____      _____

_____      _____

If your answer is "YES" for all of the companies listed in Question " 20" please proceed to
Question " 21 ".

 If your answer is "NO" for any entity listed in Question "20" strike that company from the
lists in Question "21" by drawing a line through it and do not consider that entity in
answering  Question "21".

QUESTION 21.  State the percentage of fault  that each of the following bears for

the injuries to plaintiff HUBERT A. PEACE .  These percentages must total 100 percent.

| COMPANY | YES | NO | VOTE- 5/6 MUST AGREE |
|---|---|---|---|
| Special Electric Company, Inc. | | O % | |
| Hedman Resources, Ltd. | 50 % | | |
| Asbestos Corporation, Ltd. | 4 % | | |
| Buffalo Insulation | 7.5% | | |
| Carey Canada | 3 % | | |
| ~~Commercial Chemicals~~ | | | |
| Johns-Manville | 13 % | | |
| McLaughlin Insulation | 7.5% | | |
| ~~Meyers Chemicals~~ | | | |
| North American Asbestos Company | 13 % | | |
| Owens-Corning (Kaylo) | 1 % | | |
| Pfaudler, inc. | 1 % | | |
| ~~Union Carbide Corporation~~ | | | |
| ~~Vermont Asbestos~~ | | | |

Total must be 100%

-14-

Unanimous

_____          _____

_____          _____

_____          _____

**We certify that the above is our verdict.  (All jurors must sign).**

_Gregory D. Hart_          _MaryAnne Stevens_

_Rehu Ben_          _Jamill Kennedy_

_Dafo Pat_          _Carol Foster_

REPORT TO THE COURT

# EXHIBIT 11

Exhibit 11

FILED: ERIE COUNTY CLERK 12/18/2014 08:59 AM          INDEX NO. 802680/2013
NYSCEF DOC. NO. 219                                   RECEIVED NYSCEF: 12/18/2014

1 -

FILED AND
DOCKETED

Dec 18 2014
AT   04:21 P   M
ERIE COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISTRICT

In Re   Eighth Judicial District
        Asbestos Litigation

This Document Applies to:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

HUBERT A. PEACE and
RHODA PEACE, his spouse,

                              Plaintiffs,

                - against-

ASBESTOS CORPORATION, LTD., et al.
(HEDMAN RESOURCES LIMITED),

                              Defendants.

**EIGHTH JUDICIAL DISTRICT
ASBESTOS LITIGATION**

**JUDGMENT**

**Index No. I2013-802680**

WHEREAS the issues in the above-entitled matter were duly tried before a jury and this Court, the Honorable Jeremiah J. Moriarty, III, JSC, presiding, at the Erie County Courthouse at 25 Delaware Avenue, Part 15, 2nd Floor, Buffalo, New York 14202, at a trial commencing on September 30, 2014, and concluding October 21, 2014, and the plaintiffs, HUBERT A. PEACE and RHODA PEACE, duly appeared by their attorneys, Lipsitz & Ponterio, LLC (Michael A. Ponterio and Keith R. Vona); and   Defendant SPECIAL ELECTRIC COMPANY, INC, appeared by its attorneys, McGIVNEY & KLUGER, P.C. (Gary Casimir, Frank Derby and Justin Howland); and defendant HEDMAN RESOURCES LIMITED, failed to appear or offer any evidence at trial, despite having received adequate notice thereof, and being subject to the jurisdiction of the Court;

WHEREAS defendant HEDMAN RESOURCES LIMITED was duly served with the Summons and Complaint in this action, a copy of which is annexed to and incorporated herein, as

1

evidenced by Affidavit of Service, effectuated in the City of Toronto, on November 26, 2013, by

delivery of the Summons and Complaint upon HEDMAN RESOURCES LIMITED, as further set

forth in the Affidavit of Service, a copy of which is annexed to and incorporated herein;

WHEREAS, hearing allegations of the plaintiffs and evidence relating to their claims, and

having considered the defenses tendered by defendant SPECIAL ELECTRIC COMPANY, INC. and

defendant HEDMAN RESOURCES LIMITED, having tendered no defense, the jury rendered a

verdict on October 21, 2014, in favor of the plaintiffs and against HEDMAN RESOURCES

LIMITED, as follows:

> The sum of Three Hundred Fifty Thousand Dollars ($350,000.00) to HUBERT A.
> PEACE for damages he has sustained in the past for pain and suffering; the sum of
> Eight Hundred Ten Thousand Dollars ($810,000.00) to HUBERT A. PEACE for
> damages he will sustain in the future for pain and suffering, to be paid out over a
> period of one (1) year.

> The sum of One Hundred Fifty Five Thousand Dollars ($155,000.00) to RHODA
> PEACE for damages she has sustained in the past for loss of her husband's services
> and society; the sum of Two Hundred Ninety Seven Thousand Dollars ($297,000.00)
> to RHODA PEACE for damages she will sustain in the future for loss of her
> husband's services and society, to be paid out over a period of one (1) year;

WHEREAS the jury delivered its verdict on October 21, 2014 in the form of a

Verdict Sheet, a copy of which is annexed to and incorporated herein;

WHEREAS said damages awarded by the jury totaled One Million Six Hundred Twelve

Thousand Dollars ($1,612,000.00);

WHEREAS the jury found the defendant HEDMAN RESOURCES LIMITED fifty percent

(50%) liable for the plaintiffs' damages;

WHEREAS additionally the jury found pursuant to CPLR §1602(7) that defendant

HEDMAN RESOURCES LIMITED acted with reckless disregard for the safety of others, thus

making said defendant HEDMAN RESOURCES LIMITED jointly liable with the non-settled tortfeasors for those shares of liability for damages allocated by the jury to them;

WHEREAS the jury found the following non-settled tortfeasors liable for the plaintiffs' damages based on the following shares of allocated fault: CAREY CANADA three percent (3%); JOHNS-MANVILLE thirteen percent (13%); and NORTH AMERICAN ASBESTOS CORPORATION thirteen percent (13%);

WHEREAS defendant HEDMAN RESOURCES LIMITED is thus liable to the plaintiffs for seventy-nine percent (79%) of the their total damages of One Million Six Hundred Twelve Thousand Dollars ($1,612,000.00), amounting to the sum of One Million Two Hundred Seventy-Three Thousand Four Hundred Eighty Dollars ($1,273,480.00) for which plaintiffs should have judgment against defendant HEDMAN RESOURCES LIMITED,

WHEREAS former counsel for defendant HEDMAN RESOURCES LIMITED, in its application for permission to withdraw from further representation of HEDMAN RESOURCES LIMITED stated affirmatively to this court on or about June 7, 2013, that HEDMAN RESOURCES LIMITED was subject to service of process in care of Stephen A. Edell, Suite 5700, First Canadian Place, 100 King Street Toronto, Ontario, M5X 1C7, Canada,

NOW, upon the motion of Lipsitz & Ponterio, LLC (Michael A. Ponterio, of counsel), attorneys for the plaintiffs, it is hereby

ORDERED, ADJUDGED AND DECREED that plaintiffs HUBERT PEACE and RHODA PEACE may effectuate service of the Judgment entered in this action by regular mail addressed to Hedman Resources Limited c/o Stephen A. Edell, Suite 5700, First Canadian Place, 100 King Street Toronto, Ontario, M5X 1C7, Canada, and that such service upon HEDMAN RESOURCES LIMITED shall be deemed proper and adequate; and it is further

3

ORDERED, ADJUDGED, AND DECREED, that the plaintiffs, HUBERT A. PEACE and RHODA PEACE, residing at 4810 Clifton Parkway, Hamburg, New York 14075, recover of the defendant HEDMAN RESOURCES LIMITED, with last known principal place of business at: Suite 5700, First Canadian Place, 100 King Street, Toronto, Ontario MSX 1C7, Canada, for the sum of One Million Two Hundred Seventy-Three Thousand Four Hundred Eighty Dollars ($1,273,480.00), with interest thereon from October 21, 2014, at the statutory rate provided by New York law, amounting to One Million Two Hundred Ninety-One Thousand Sixty-Four Dollars ($1,291.064.00), together with costs and disbursements as taxed in the sum of One Thousand Two Hundred Two and 38/100 Dollars ($1,202.38), making in all the sum of One Million Two Hundred Ninety-Two Thousand Two Hundred Sixty-Six and 38/100 Dollars ($1,292.266.38), and that the plaintiffs have execution therefor.

Judgment signed and filed this _____day of _____, 2014.

**Judgment Signed and Filed** 12/18/2014

Christopher L. Jacobs County Clerk

_____
Clerk

# EXHIBIT
# 12

**Exhibit 12**



## LIPSITZ & PONTERIO, LLC
### ATTORNEYS AT LAW

ATTORNEYS:
JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. McKINNON
KATHLEEN A. BURR
JOSEPH T. KREMER
ANNE E. JOYNT
KEITH R. VONA
DENNIS P. HARLOW
MATHEW J. MORTON
ZACHARY J. WOODS
MARY M. COMERFORD
GRACE M. GANNON
MICHAEL J. JAROSZ



* Also admitted in Massachusetts

OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES
ELIZABETH M. SHOST

LICENSED WORKERS'
COMPENSATION REP:
JOHN M. PULLANO

135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
*Phone* (716) 849-0701
*Fax* (716) 849-0708

www.lipsitzponterio.com
lp@lipsitzponterio.com

Writer's Direct E-Mail
JNL@lipsitzponterio.com

January 22, 2015

Eric T. Boron, Esq.
Mura & Storm, PLCC
14 Lafayette Square
Buffalo, New York 14203

Hedman Resources, Ltd.
c/o Richard Shore, Esq.
Gilbert LLP
1100 New York Avenue NW, Suite 700
Washington, DC  20005

Hedman Resources, Limited
c/o Stephen A. Edell, President/CEO
2 Bloor Street E., Suite 3500
Hudson's Bay Centre
Toronto, Ontario  M4W 1A8
CANADA

Hedman Resources, Limited
c/o Stephen A. Edell, President/CEO
100 King Street, Suite 5700
Toronto, Ontario  M5X 1C7
CANADA

Re:   *Hubert A. Peace, et ux. v. Asbestos Corporation, Ltd., et al.*
      Eric County Index No.:  802680-2013

Dear Judgment Debtor:

Enclosed please find copy of the Order Directing Entry of Judgment in the above-referenced matter, along with the Judgment entered in the Erie County Clerk's Office on December 18, 2014 in favor of plaintiffs, Hubert A. Peace and Rhoda Peace, in the sum of $1,292,266.38 against Hedman Resources, Ltd., with Notice of Entry on said date.

January 22, 2015
Page 2

       Pursuant to New York Insurance Law §3420, demand for payment is hereby being made upon you.

       Please mark your records accordingly to reflect receipt of the above.

                           Very truly yours,

                           LIPSITZ & PONTERIO, LLC

JNL:asj                         By:  John N. Lipsitz
Encls.

# EXHIBIT
# 13

Exhibit 13



**LIPSITZ & PONTERIO, LLC**

ATTORNEYS AT LAW

ATTORNEYS:
JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. MCKINNON
KATHLEEN A. BURR
JOSEPH T. KREMER
ANNE E. JOYNT
KEITH R. VONA
DENNIS P. HARLOW
MATHEW J. MORTON
ZACHARY J. WOODS
MARY M. COMERFORD
GRACE M. GANNON
MICHAEL J. JAROSZ

* Also admitted in Massachusetts



OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES
ELIZABETH M. SHOST

LICENSED WORKERS'
COMPENSATION REP:
JOHN M. PULLANO

135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
*Phone* (716) 849-0701
*Fax* (716) 849-0708

www.lipsitzponterio.com
lp@lipsitzponterio.com
Writer's Direct E-Mail:
JNL@lipsitzponterio.com

January 22, 2015

Eileen T. McCabe, Esq.
Mendes & Mount, LLP
750 Seventh Avenue
New York, NY 10019

Ms. Stephanie Reinertsen
Resolute Management, Inc. NE
1000 Washington Street
Boston, MA 02118

One Beacon America Insurance Company
One Beacon Lane
Canton, MA 02021-1030

Re:  *Hubert A. Peace, et ux. v. Asbestos Corporation, Ltd., et al.*
Erie County Index No.: 802680-2013

Dear Judgment Debtor:

Enclosed please find copy of the Order Directing Entry of Judgment in the above-referenced matter, along with the Judgment entered in the Erie County Clerk's Office on December 18, 2014 in favor of plaintiffs, Hubert A. Peace and Rhoda Peace, in the sum of $1,292,266.38 against Hedman Resources, Ltd., with Notice of Entry on said date.

Pursuant to New York Insurance Law §3420, demand for payment is hereby being made upon you.

Please mark your records accordingly to reflect receipt of the above.

Very truly yours,

LIPSITZ & PONTERIO, LLC

By: John N. Lipsitz

JNL:asj
Encls.



## LIPSITZ & PONTERIO, LLC
### ATTORNEYS AT LAW

ATTORNEYS:
JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. MCKINNON
KATHLEEN A. BURR
JOSEPH T. KREMER
ANNE E. JOYNT
KEITH R. VONA
DENNIS P. HARLOW
MATHEW J. MORTON
ZACHARY J. WOODS
MARY M. COMERFORD
GRACE M. GANNON
MICHAEL J. JAROSZ

* Also admitted in Massachusetts



OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES
ELIZABETH M. SHOST

LICENSED WORKERS'
COMPENSATION REP:
JOHN M. PULLANO

135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
*Phone* (716) 849-0701
*Fax* (716) 849-0708

www.lipsitzponterio.com
lp@lipsitzponterio.com

Writer's Direct E-Mail
JNL@lipsitzponterio.com

January 22, 2015

Anne M. Mohan, Esq.
Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

Shawn L. Kelly, Esq.
Dentons US LLP
101 JFK Parkway
Short Hills, NJ 07078-2708

Jonathan Henry, Esq.
101 JFK Parkway
Short Hills, NJ 07078-2708

Mr. Joseph Follis
Seaton Insurance Company
200 Metro Center Boulevard
Unit 8
Warwick, RI 02886

Ronald D. Puhala, Esq.
Goldberg Segalla
902 Carnegie Center
Suite 100
Princeton, NJ 08540-6530

Re:   *Hubert A. Peace, et ux. v. Asbestos Corporation, Ltd., et al.*
      Erie County Index No.: 802680-2013

Dear Judgment Debtor:

Enclosed please find copy of the Order Directing Entry of Judgment in the above-referenced matter, along with the Judgment entered in the Erie County Clerk's Office on December 18, 2014 in favor of plaintiffs, Hubert A. Peace and Rhoda Peace, in the sum of $1,292,266.38 against Hedman Resources, Ltd., with Notice of Entry on said date.

Pursuant to New York Insurance Law §3420, demand for payment is hereby being made upon you.

Please mark your records accordingly to reflect receipt of the above.

Very truly yours,

LIPSITZ & PONTERIO, LLC

By: John N. Lipsitz

JNL:asj
Encls.



ATTORNEYS:
JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. MCKINNON
KATHLEEN A. BURR
JOSEPH T. KREMER
ANNE E. JOYNT
KEITH R. VONA
DENNIS P. HARLOW
MATHEW J. MORTON
ZACHARY J. WOODS
MARY M. COMERFORD
GRACE M. GANNON
MICHAEL J. JAROSZ
* Also admitted in Massachusetts

## LIPSITZ & PONTERIO, LLC
### ATTORNEYS AT LAW

135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
*Phone* (716) 849-0701
*Fax* (716) 849-0708

www.lipsitzponterio.com
lp@lipsitzponterio.com
Writer's Direct E-Mail
JNL@lipsitzponterio.com

OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES
ELIZABETH M. SHOST

LICENSED WORKERS'
COMPENSATION REP:
JOHN M. PULLANO

January 22, 2015

Edward M. Pinter, Esq.
Ford, Marrin, Esposito,
   Witmeyer & Gleser L.L.P.
Wall Street Plaza
23rd Floor
New York, NY 10005-1875

Dan Connell
Resolute Account Manager
Resolute Management Inc.
Direct Claims Division
79 W. Monroe Street Fl 7
Chicago, IL 60603

Meghan E. Ruesch, Esq.
Ford, Marrin, Esposito,
   Witmeyer & Gleser L.L.P.
Wall Street Plaza
23rd Floor
New York, NY 10005-1875

Continental Insurance Company
Individually and as Successor-in-Interest
To Harbor Insurance Company (CNA)
333 S. Wabash Avenue
Chicago, IL 60604

Re:   *Hubert A. Peace, et ux. v. Asbestos Corporation, Ltd., et al.*
      Erie County Index No.: 802680-2013

Dear Judgment Debtor:

Enclosed please find copy of the Order Directing Entry of Judgment in the above-referenced matter, along with the Judgment entered in the Erie County Clerk's Office on December 18, 2014 in favor of plaintiffs, Hubert A. Peace and Rhoda Peace, in the sum of $1,292,266.38 against Hedman Resources, Ltd., with Notice of Entry on said date.

Pursuant to New York Insurance Law §3420, demand for payment is hereby being made upon you.

Please mark your records accordingly to reflect receipt of the above.

Very truly yours,

LIPSITZ & PONTERIO, LLC



By: John N. Lipsitz

JNL:asj
Encls.



ATTORNEYS:
JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. McKINNON
KATHLEEN A. BURR
JOSEPH T. KREMER
ANNE E. JOYNT
KEITH R. VONA
DENNIS P. HARLOW
MATHEW J. MORTON
ZACHARY J. WOODS
MARY M. COMERFORD
GRACE M. GANNON
MICHAEL J. JAROSZ
* Also admitted in Massachusetts

**LIPSITZ & PONTERIO, LLC**
ATTORNEYS AT LAW

135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
*Phone* (716) 849-0701
*Fax* (716) 849-0708

www.lipsitzponterio.com
lp@lipsitzponterio.com
Writer's Direct E-Mail
JNL@lipsitzponterio.com

OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES
ELIZABETH M. SHOST

LICENSED WORKERS'
COMPENSATION REP:
JOHN M. PULLANO

January 22, 2015

Ronald D. Puhala, Esq.
Goldberg Segalla
902 Carnegie Center, Suite 100
Princeton, NJ 08540-6530

Anne M. Mohan, Esq.
Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

Sharon Angelino, Esq.
Goldberg Segalla
665 Main Street, Suite 400
Buffalo, NY 14203-1425

Helen Franzese, Esq.
Goldberg Segalla
No. 1 Cornhill
London EC3V 3ND

Assicurazioni Generali, SPA
Assicurazioni Generali U.S. Branch
7 World Trade Center
250 Greenwich Street, 33rd Floor
New York, NY 10007-0010

Harper Insurance Limited f/k/a Turegum Insurance
Company
250 Greenwich Street, 33rd Floor
New York, NY 10007-0010

Re:  *Hubert A. Peace, et ux. v. Asbestos Corporation, Ltd., et al.*
Erie County Index No.:  802680-2013

Dear Judgment Debtor:

Enclosed please find copy of the Order Directing Entry of Judgment in the above-referenced matter, along with the Judgment entered in the Erie County Clerk's Office on December 18, 2014 in favor of plaintiffs, Hubert A. Peace and Rhoda Peace, in the sum of $1,292,266.38 against Hedman Resources, Ltd., with Notice of Entry on said date.

Pursuant to New York Insurance Law §3420, demand for payment is hereby being made upon you.

Please mark your records accordingly to reflect receipt of the above.

Very truly yours,

LIPSITZ & PONTERIO, LLC

By:  John N. Lipsitz

JNL:asj
Encls.



ATTORNEYS:
JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. McKINNON
KATHLEEN A. BURR
JOSEPH T. KREMER
ANNE E. JOYNT
KEITH R. VONA
DENNIS P. HARLOW
MATHEW J. MORTON
ZACHARY J. WOODS
MARY M. COMERFORD
GRACE M. GANNON
MICHAEL J. JAROSZ

\* Also admitted in Massachusetts

## LIPSITZ & PONTERIO, LLC
### ATTORNEYS AT LAW

135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
*Phone* (716) 849-0701
*Fax* (716) 849-0708

www.lipsitzponterio.com
lp@lipsitzponterio.com

Writer's Direct E-Mail
JNL@lipsitzponterio.com

OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES
ELIZABETH M. SHOST

LICENSED WORKERS'
COMPENSATION REP.
JOHN M. PULLANO

January 22, 2015

Mr. David Lowe
Travelers Special Liability Group
280 E. 9th Street, Suite 200
Indianapolis, IN 46240-3861

Mr. Chi H. Murphy
Assistant Director
Travelers Special Liability Group
One Tower Square – 8FP
Hartford, CT 06183

      Re:    *Hubert A. Peace, et ux. v. Asbestos Corporation, Ltd., et al.*
             Erie County Index No.: 802680-2013

Dear Judgment Debtor:

      Enclosed please find copy of the Order Directing Entry of Judgment in the above-referenced matter, along with the Judgment entered in the Erie County Clerk's Office on December 18, 2014 in favor of plaintiffs, Hubert A. Peace and Rhoda Peace, in the sum of $1,292,266.38 against Hedman Resources, Ltd., with Notice of Entry on said date.

      Pursuant to New York Insurance Law §3420, demand for payment is hereby being made upon you.

      Please mark your records accordingly to reflect receipt of the above.

             Very truly yours,

             LIPSITZ & PONTERIO, LLC

             By:   John N. Lipsitz

JNL:asj
Encls.

ATTORNEYS:
JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. MCKINNON
KATHLEEN A. BURR
JOSEPH T. KREMER
ANNE E. JOYNT
KEITH R. VONA
DENNIS P. HARLOW
MATHEW J. MORTON
ZACHARY J. WOODS
MARY M. COMERFORD
GRACE M. GANNON
MICHAEL J. JAROSZ

* Also admitted in Massachusetts



## LIPSITZ & PONTERIO, LLC
### ATTORNEYS AT LAW

135 Delaware Avenue, 5th Floor
Buffalo, New York 14202
*Phone* (716) 849-0701
*Fax* (716) 849-0708

www.lipsitzponterio.com
lp@lipsitzponterio.com
Writer's Direct E-Mail
JNL@lipsitzponterio.com

OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES
ELIZABETH M. SHOST

LICENSED WORKERS'
COMPENSATION REP:
JOHN M. PULLANO

January 22, 2015

Ms. Brooke Green
Resolute Management, Inc., NE
1000 Washington Street
Boston, MA  02118

Ms. Stephanie Reinertsen
Resolute Management, Inc. NE
1000 Washington Street
Boston, MA  02118

Dan Connell
Resolute Account Manager
Resolute Management Inc.
Direct Claims Division
79 W. Monroe Street Fl 7
Chicago, IL  60603

Re:     *Hubert A. Peace, et ux. v. Asbestos Corporation, Ltd., et al.*
        Erie County Index No.:  802680-2013

Dear Judgment Debtor:

Enclosed please find copy of the Order Directing Entry of Judgment in the above-referenced matter, along with the Judgment entered in the Erie County Clerk's Office on December 18, 2014 in favor of plaintiffs, Hubert A. Peace and Rhoda Peace, in the sum of $1,292,266.38 against Hedman Resources, Ltd., with Notice of Entry on said date.

Pursuant to New York Insurance Law §3420, demand for payment is hereby being made upon you.

Please mark your records accordingly to reflect receipt of the above.

Very truly yours,

LIPSITZ & PONTERIO, LLC



By: John N. Lipsitz

JNL:asj
Encls.

# EXHIBIT

# 14

**Exhibit 14**

**DEPARTMENT OF HEALTH**

REGISTER NUMBER
144

# CERTIFICATE OF DEATH

STATE FILE NUMBER

| 1. NAME: FIRST | MIDDLE | LAST | 2. SEX: MALE ☒ 1 FEMALE ☐ 2 | 3A. DATE OF DEATH: MONTH 02 DAY 10 YEAR 2015 | 3B. HOUR: 4:35 PM |
|---|---|---|---|---|---|
| HUBERT | A. | PEACE | | | |

| 4A. PLACE OF DEATH: (Check one) HOSPITAL DOA ☐ HOSPITAL OUTPATIENT ☐ HOSPITAL INPATIENT ☐ NURSING HOME ☐ PRIVATE RESIDENCE ☐ HOSPICE FACILITY ☒ OTHER (Specify): | | 4B. IF FACILITY, DATE ADMITTED: MONTH 02 DAY 10 YEAR 2015 |
|---|---|---|

| 4C. NAME OF FACILITY: (If not facility, give address) HOSPICE BUFFALO, INC | 4D. LOCALITY: (Check one and specify) CITY ☐ VILLAGE ☐ TOWN ☒ CHEEKTOWAGA | 4E. COUNTY OF DEATH ERIE |
|---|---|---|

| 4F. MEDICAL RECORD NO. 1204002 | 4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION? (If yes, specify institution name, city or town, county and state) NO ☒ YES ☐ |
|---|---|

| 5. DATE OF BIRTH: MONTH 12 DAY 30 YEAR 1939 | 6A. AGE IN YEARS: 75 yrs. | 6B. IF UNDER 1 YEAR ENTER: months days | 6C. IF UNDER 1 DAY ENTER: hours minutes | 7A. CITY AND STATE OF BIRTH: (If not USA, Country and Region/Province) PUNXSUTAWNEY, PA | 7B. IF AGE UNDER 1 YEAR, NAME OF HOSPITAL OF BIRTH: |
|---|---|---|---|---|---|

| 8. SERVED IN U.S. ARMED FORCES? (Specify years) NO ☒ 0 YES ☐ 1 | 9. DECEDENT OF HISPANIC ORIGIN? Check the boxes that best describe whether the decedent is Spanish/Hispanic/Latina. A ☒ No, not Spanish/Hispanic/Latino B ☐ Yes, Mexican, Mexican American, Chicano C ☐ Yes, Puerto Rican D ☐ Yes, Cuban E ☐ Yes, other Spanish/Hispanic/Latino (Specify) | 10. DECEDENT'S RACE: Check one or more races to indicate what the decedent considered himself or herself to be. A ☒ White/Caucasian B ☐ Black or African American C ☐ Asian Indian D ☐ Chinese F ☐ Filipino G ☐ Japanese H ☐ Korean I ☐ Vietnamese J ☐ Native Hawaiian K ☐ Guamanian or Chamorro M ☐ Samoan N ☐ American Indian or Alaska Native (specify) O ☐ Other Asian (specify) P ☐ Other Pacific Islander (specify) S ☐ Other (specify) |
|---|---|---|

| 11. DECEDENT'S EDUCATION: Check the box that best describes the highest degree or level of school completed at the time of death. 1 ☐ 8th grade 2 ☐ 9th-12th grade; no diploma 3 ☒ High school graduate or GED 4 ☐ Some college credit, but no degree 5 ☐ Associate's degree 6 ☐ Bachelor's degree 7 ☐ Master's degree 8 ☐ Doctorate/Professional degree |
|---|

| 12. SOCIAL SECURITY NUMBER: 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 | 13. MARITAL STATUS: NEVER MARRIED ☐ 1 MARRIED ☒ 2 WIDOWED ☐ 3 DIVORCED ☐ 4 SEPARATED ☐ 5 | 14. SURVIVING SPOUSE: Enter birth name of spouse if married or separated. RHODA HARDIE |
|---|---|---|

| 15A. USUAL OCCUPATION: (Do not enter retired) OPERATOR | 15B. KIND OF BUSINESS OR INDUSTRY: CHEMICAL COMPANY | 15C. NAME AND LOCALITY OF COMPANY OR FIRM: DUREZ N. TONAWANDA, NY |
|---|---|---|

| 16A. RESIDENCE: (State or Country if not USA) NEW YORK | 16B. County or Region/Province if not USA: ERIE | 16C. LOCALITY: (Check and specify) CITY ☐ VILLAGE ☐ TOWN ☒ HAMBURG | 16F. IF CITY OR VILLAGE, IS RESIDENCE WITHIN CITY OR VILLAGE LIMITS? ☐ YES ☐ NO IF NO, SPECIFY TOWN |
|---|---|---|---|

| 16D. STREET AND NUMBER OF RESIDENCE: 4810 CLIFTON PARKWAY | 16E. ZIP CODE: 14075 |
|---|---|

| 17. BIRTH NAME OF FATHER / PARENT: FIRST HARRY LAST PEACE | 18. BIRTH NAME OF MOTHER / PARENT: FIRST HELEN MI LAST THOMPSON |
|---|---|

| 19A. NAME OF INFORMANT: RHODA PEACE | 19B. MAILING ADDRESS: (include zip code) 4810 CLIFTON PKWY, HAMBURG NY 14075 |
|---|---|

| 20A. METHOD OF DISPOSITION: 1 ☒ BURIAL 2 ☐ CREMATION 4 ☐ HOLD 5 ☐ DONATION 6 ☐ ENTOMBMENT | 20B. PLACE OF BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION: MONTH 02 DAY 16 YEAR 2015 ELMLAWN CEMETERY | 20C. LOCATION: (City or town and state) TONAWANDA, NY |
|---|---|---|

| 21A. NAME AND ADDRESS OF FUNERAL HOME: LAKESIDE MEMORIAL FUNERAL HOME, INC 4199 LAKE SHORE RD HAMBURG, NY 14075 | 21B. REGISTRATION NUMBER: 00990 |
|---|---|

| 22A. NAME OF FUNERAL DIRECTOR: JOHN H. ATFIELD | 22B. SIGNATURE OF FUNERAL DIRECTOR: | 22C. REGISTRATION NUMBER: 10126 |
|---|---|---|

| 23A. SIGNATURE OF REGISTRAR: | 23B. DATE FILED: 02 12 2015 | 24A. BURIAL/REMOVAL PERMIT ISSUED BY: | 24B. DATE ISSUED: 02 12 2015 |
|---|---|---|---|

ITEMS 25 THRU 33 COMPLETED BY CERTIFYING PHYSICIAN -- OR -- CORONER/CORONER'S PHYSICIAN OR MEDICAL EXAMINER

| 25A. CERTIFICATION: To the best of my knowledge, death occurred at the time, date and due to the causes stated. Certifier's Name: JOHN MANGONAN | License No.: 159578 | Signature: | MONTH 2 DAY 11 YEAR 2015 |
|---|---|---|---|

| 25B. Certifier's Title: ☒ 1 Attending Physician ☐ 2 Coroner ☐ 3 Physician acting on behalf of Attending Physician ☐ 4 Medical Examiner / Deputy Medical Examiner | Address: 225 Como Park Blvd, Cheektowaga NY 14227 |
|---|---|

| 25E. If coroner is not a physician, enter Coroner's Physician's name & title: | License No.: | Signature: |
|---|---|---|

| 25F. If certifier is not attending physician, enter Attending Physician's name & title: | Address: |
|---|---|

| 26A. Attending physician attended deceased FROM MONTH 01 DAY 28 YEAR 2015 TO MONTH 02 DAY 10 YEAR 2015 | 26B. Deceased last seen alive MONTH 02 DAY 10 YEAR 2015 | 26C. Pronounced dead MONTH 02 DAY 10 YEAR 2015 4:35 PM |
|---|---|---|

| 27. MANNER OF DEATH: NATURAL ☒ 1 ACCIDENT ☐ 2 HOMICIDE ☐ 3 SUICIDE ☐ 4 UNDETERMINED CIRCUMSTANCES ☐ 5 PENDING INVESTIGATION ☐ 6 SEE INSTRUCTION SHEET FOR CAUSE OF DEATH | 28. WAS CASE REFERRED TO CORONER OR MEDICAL EXAMINER? NO ☒ YES ☐ | 29A. AUTOPSY? NO ☒ YES ☐ REFUSED ☐ | 29B. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH? ☐ 1 YES ☐ NO |
|---|---|---|---|

CONFIDENTIAL          SEE INSTRUCTION SHEET FOR CAUSE OF DEATH          CONFIDENTIAL

| 30. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR (A), (B), and (C).) | | APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
|---|---|---|
| PART I. IMMEDIATE CAUSE (A) Respiratory Failure | | Hours |
| DUE TO OR AS A CONSEQUENCE OF: (B) Mesothelioma | | Year |
| DUE TO OR AS A CONSEQUENCE OF: (C) | | |

| PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART I (A): | DID TOBACCO USE CONTRIBUTE TO DEATH? 0 ☐ NO 1 ☐ YES 2 ☐ PROBABLY 3 ☒ UNKNOWN |
|---|---|

| 31A. INJURY DATE: MONTH DAY YEAR | HOUR: m | 31B. INJURY LOCALITY: (City or town and county and state) | 31C. DESCRIBE HOW INJURY OCCURRED: | 31D. PLACE OF INJURY: | 31E. INJURY AT WORK? NO ☐ YES ☐ |
|---|---|---|---|---|---|

| 31F. IF TRANSPORTATION INJURY, SPECIFY: | 32. WAS DECEDENT HOSPITALIZED? | 33A. IF FEMALE | 33B. DATE OF DELIVERY: MONTH DAY YEAR |
|---|---|---|---|

PEACE 4:35 PM DATE OF DEATH: 2-10-15 CAUSE OF DEATH

# EXHIBIT
# 15

**Exhibit 15**



The Insurance Company Whose Name Appears on the Declarations Page Forming a Part of This Policy
BOSTON, MASSACHUSETTS
(A stock insurance company herein called the company)

with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## ——— INSURING AGREEMENTS ———

**I. COVERAGES:** To indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of "ultimate net loss", because of:

(a) personal injuries, as hereinafter defined;
(b) property damage, as hereinafter defined;
(c) advertising liability, as hereinafter defined.

**II. DEFINITIONS:**

1. **Insured.**

The unqualified word "insured" includes the named insured and also includes:

(a) except with respect to liability arising out of the ownership, operation, maintenance, use, loading and unloading of automobiles, aircraft and watercraft—any director, stockholder, officer, or other employee of the named insured, while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the named insured. If the named insured is a partnership, any partner therein but only with respect to his liability as such;

(b) any other person or organization who is an additional insured under any underlying policy of insurance subject to all the limitations upon coverage under such policy other than the limits of the underlying insurer's liability;

(c) with respect to any automobile owned by the named insured or hired for use by or on behalf of the named insured, or to any aircraft hired for use by or on behalf of the named insured, any person while using such automobile or such aircraft and any person or organization legally responsible for the use thereof, provided the actual use thereof is with the permission of the named insured. The insurance afforded by this sub-division (c), with respect to any person or organization other than the named insured does not apply—

1. to any person. or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any occurrence arising out of the operation thereof;

2. to (i) any manufacturer of aircraft engines or component parts of aircraft or aviation accessories, or (ii) any aircraft sales or service or repair organization, or (iii) any seller of aircraft supplies, accessories, equipment or component parts of aircraft or (iv) any airport or hangar operator or (v) the respective employees or agents of any of the aforementioned, with respect to any occurrence arising out of the operations of any of the aforementioned;

3. with respect to any hired automobile or aircraft, to the owner or lessee thereof, other than the named insured, or any employee of such owner or lessee.

Except with respect to sub-paragraph 2 hereof, this sub-division (c) shall not apply if it restricts the insurance granted under sub-division (b) above.

2. **Personal Injuries.**

The term "personal injuries" shall mean bodily injury, sickness or disease, mental injury, mental anguish, shock, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation, invasion of right of privacy, libel, slander or defamation of character, including death at any time resulting therefrom.

3. **Property Damage.**

The term "property damage" shall mean (a) physical injury to, or physical destruction of, tangible property, including the loss of use thereof but excluding all other consequential damages, or (b) injury to or destruction of property, including the loss of use thereof, caused by accident.

CONFIDENTIAL

OB0020

**4. Advertising Liability.**

The term "advertising liability" shall mean (1) libel, slander or defamation, (2) any infringement of copyright or of title or of slogan, piracy or unfair competition or idea misappropriation under an implied contract, or (3) any invasion of right of privacy—all committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the named insured's advertising activities.

**5. Ultimate Net Loss.**

The term "ultimate net loss" shall mean the total sum which the insured, or any company as his insurer, or both, becomes legally obligated to pay as damages because of personal injury, property damage, or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest on judgments, expenses for doctors, lawyers, nurses, and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the named insured's or of any underlying insurer's permanent employees.

The company shall not be liable for any expenses as aforesaid when payment of such expenses is included in other valid and collectible insurance.

**6. Automobile.**

The term "automobile" shall mean a land motor vehicle, trailer or semi-trailer.

**7. Aircraft.**

The word "aircraft" shall mean heavier than air or lighter than air aircraft designed to transport persons or property.

**8. Products—Completed Operations Hazards.**

The term "products—completed operations hazards" shall mean liability arising out of

(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the occurrence happens after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such occurrence happens away from premises owned, rented or controlled by the named insured; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(2) operations, if the occurrence happens after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively

performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be "operations" within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials. The word "operations" includes any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere whether or not goods or products are involved in such operations.

**9. Occurrence.**

The term "occurrence" shall mean (a) an accident, or (b) an event, or continuous or repeated exposure to conditions which unexpectedly results in personal injury, property damage, or advertising liability (either alone or in any combination) during the policy period. With respect to Coverages I (a) and I (b), except with respect to the Products—Completed Operations Hazards, all personal injury and property damage (either alone or in combination) arising out of one event or continuous or repeated exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed to be one occurrence. With respect to Coverages I (a) and I (b), all personal injury and property damage (either alone or in combination) arising out of the Products—Completed Operations Hazards shall be deemed to be one occurrence if arising out of one lot of goods or products prepared or acquired by the named insured or others trading under his name. With respect to Coverage I (c), all personal injury and property damage (either alone or in combination) involving the same injurious material or act, regardless of the frequency or repetition thereof, the number or kind of media used, and the number of claimants, shall be deemed to arise out of one occurrence

**III. POLICY PERIOD—TERRITORY:** This policy applies only to occurrences, as herein defined, which happen during the policy period anywhere in the world; provided, however, if any occurrence happens during the policy period of this policy which results in personal injury, property damage or advertising liability of the type which would be insured under the provisions of this policy and if personal injury, property damage or advertising liability resulting from that same occurrence has also happened during the policy period of any similar policy of insurance issued by the company to any named insured hereunder prior to the policy period of this policy, that policy issued by the company which is in force at the time the first claim is made against the insured which could result in ultimate net loss payable thereunder shall constitute the only policy of the company which shall apply to such occurrence and to all personal injury, property damage and advertising liability (either alone or in combination) at any time resulting from such occurrence, regardless of the number of similar policies of insurance issued by the company which could otherwise apply in the absence of this agreement.

AMERICAN EMPL

Narstoll Jaylon
*Secretary.*

———— EXCLUSIONS ————

This policy does not apply:

(a) to injury to or destruction of property owned by any named insured;

(h) except as provided in exclusion (g), to bodily injury, sickness, disease or death resulting therefrom, or property damage, caused intentionally by or at the direction of the insured.

CONFIDENTIAL                                                    OB0021

This policy does not apply, except insofar...  coverage is available to the insured under the underlying policies of insurance set forth in the declarations:

(c) with respect to advertising liability, to claims made against the insured:

(i) for failure of performance of contract, but this shall not relate to claims for unauthorized appropriation of ideas based upon alleged breach of implied contract;

(ii) for infringement of registered trade-mark, service mark or trade-name by use thereof as the registered trade-mark, service mark or trade-name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii) for incorrect description of any article or commodity;

(iv) for mistake in advertised price.

(d) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment, compensation or disability benefits law, or under any similar law, provided, however that this exclusion does not apply to liability of others assumed by the named insured under any contract or agreement;

(e) to claims made against the insured:

(i) for repairing or replacing any defective product or products manufactured, sold, handled or distributed by the insured or any defective part or parts thereof nor for the cost of such repair or replacement;

(ii) for the loss of use of any such defective product or products or part or parts thereof;

(iii) for improper or inadequate performance, design or specification, but nothing herein contained shall be construed to exclude claims made against the insured for personal injuries or property damage (other than property damage to a product of the insured) resulting from improper or inadequate performance, design or specification;

(f) to liability of any insured for assault and battery committed by or at the direction of such insured except liability for personal injury or death resulting from any act alleged to be an assault and battery but which was actually committed for the purpose of preventing or eliminating danger in the operation of aircraft;

(g) to any employee with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;

(h) to liability arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft; provided, however, this exclusion shall not apply to liability of the named insured for aircraft not owned by such insured;

(i) to liability arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft except liability of the named insured for watercraft not owned by such insured;

(j) to any liability of the insured due to war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

## CONDITIONS

1. **Premium.** The premium for this policy shall be as stated on the Declarations page.

2. **Inspection and Audit.** The company shall be permitted to inspect the insured's premises, operations and elevators and to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance.

3. **Special Conditions Applicable to Occupational Disease.** As regards personal injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the insured, this policy is subject to the same warranties, terms or conditions (except as regards the premium, the amount and limits of liability, any condition respecting "other insurance" and the renewal agreement, if any) as are contained in or as may be added to the policies of Underlying Insurances set forth in the Declarations prior to the happening of an occurrence for which claim is made hereunder.

4. **Limits of Liability.** The company shall only be liable for ultimate net loss in excess of either:

(a) except as provided in subparagraph (b) hereof, the applicable limits of liability of the policies of underlying insurance set forth in Item 3 of the Declarations; or

(b) as respects each occurrence not covered by such underlying insurance, or where each occurrence is covered by such underlying insurance but in recoverable amounts less than the Underlying Limits set forth in Item 4 of the Declarations, the amount of ultimate net loss set forth in the Declarations as "Underlying Limits".

but in no event shall the company be liable for an amount in excess of the applicable limit of liability set forth in Item 5 of the Declarations.

The limit of liability stated in Item 5 of the Declarations as applicable to "each occurrence" is the total limit of the company's liability under this policy for ultimate net loss as a result of any one occurrence.

Subject to the limit of liability set forth in Item 5 of the Declarations with respect to "each occurrence", the limit of liability so set forth as "aggregate" shall be the total limit of the company's liability under this policy for ultimate net loss:

(1) because of all personal injury and property damage during each consecutive twelve months of the policy period, arising out of the Products-Completed Operations Hazards, and

(2) because of all personal injury during each consecutive twelve months of the policy period sustained from Occupational Disease by any employee of the insured.

In the event of reduction or exhaustion of the aggregate limits of liability under the policies of underlying insurance by reason of losses paid thereunder, this policy shall:

(i) in the event of reduction, pay the excess of the reduced underlying insurance, and

(ii) in the event of exhaustion, continue in force under underlying insurance,

but nothing in this paragraph shall operate to increase the limits of the company's liability.

5. **Severability of Interests.** The term "the insured" is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability. If more than one insured is named in Item 1 of the Declarations, it is understood and agreed that the limits of the company's liability shall not apply separately to each such insured.

6. **Notice of Occurrence.** When an occurrence takes place which, in the opinion of the insured, involves or may involve liability on the part of the company, prompt written notice shall be given by or on behalf of the insured to the company or any of its authorized representatives. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence. Failure to so notify the company of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder shall not prejudice such claim provided such notice is then given.

7. **Assistance and Cooperation of the Insured.** Except where the aggregate limits of liability under the policies of underlying insurance set forth in Item 3 of the Declarations have been exhausted, the company shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought or proceeding instituted against the insured but the company shall have the right and shall be given the opportunity to associate with the insured or the insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where, in the judgment of the company, the claim or suit involves or appears reasonably likely to result in liability for indemnity by the company under this policy, in which event the insured, any underlying insurers involved, and the company, shall cooperate in all things in the defense of such claim or suit.

With respect to any claim made, suit brought or proceeding instituted against the insured to which the policies of underlying insurance set forth in Item 3 of the Declarations will not apply because of the exhaustion of the aggregate limits of liability thereunder, if such claim, suit or proceeding is one which could result in liability of the company to indemnify the insured hereunder for damages, the company may, if it so elects, assume

complete control of the investigation, negotiations, settlement and defense of any such claim, suit or proceeding against the insured. In the event the company notifies the insured that it has so elected, the insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence.

8. **Appeals.** In the event the insured or the insured's underlying insurer(s) elect not to appeal a judgment in excess of the underlying limits, the company may elect to make such appeal at its own cost and expense, and shall be liable for the taxable costs, disbursements and interest on judgments incidental thereto, but in no event shall the liability of the company for ultimate net loss exceed the limit of its liability stated in this policy and, in addition, the cost and expense of such appeal.

9. **Loss Payable.** Liability under this policy with respect to any occurrence shall not attach unless and until the insured, or the insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The insured shall make a definite claim for any loss for which the company may be liable under this policy within twelve (12) months after the insured shall have paid an amount of ultimate net loss in excess of the amount borne by the insured or after the insured's liability shall have been fixed and rendered certain either by final judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. If any subsequent payments shall be made by the insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty days after they are respectively claimed and proven in conformity with this policy.

10. **Other Insurance.** If any other valid and collectible insurance exists protecting the insured against ultimate net loss covered by this policy (other than the policies of underlying insurance specified in Item 3 of the Declarations and other than any policy with respect to which this policy is specified therein as underlying insurance), this policy shall be null and void with respect to such loss whether the insured is specifically named in such other policy of insurance or not; provided, however, if the amounts recoverable by the insured under such other insurance are not sufficient to completely protect the insured against such loss, this policy shall apply but only as excess insurance over such other valid and collectible insurance, in an amount not to exceed the limit of the company's liability stated in this policy, and not as contributing insurance.

11. **Subrogation.** Inasmuch as this policy is excess coverage, the insured's right of recovery against any person, firm or corporation cannot be exclusively subrogated to the company; therefore, in case of any payment hereunder, the company will act, in concert with all other interests, including the insured, concerned in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests, including the insured, that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests, including the insured, of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests, including the insured, concerned, in the ratio of their respective recoveries as finally settled.

12. **Changes.** Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy.

13. **Assignment.** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon.

14. **Cancellation.** This policy may be cancelled at any time by the insured first named in Item 1 of the Declarations by mailing to the company or any of its authorized representatives, written notice stating when thereafter such cancellation shall become effective. This policy may be cancelled by the company by mailing to the insured first named in Item 1 of the Declarations, at the address shown in the Declarations, written notice stating when, either not less than 30 days thereafter or the maximum cancellation notice period stated in the policies of underlying insurance set forth in the Declarations, whichever is the lesser, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour stated in such notice shall become the end of the policy period. Delivery of such written notice either by such insured or the company shall be equivalent to mailing. If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

15. **Maintenance of Underlying Insurance.** The policy or policies set forth in the Declarations as Underlying Insurance shall be maintained in full effect during the period this policy remains in force except for any reduction of the aggregate limits contained therein solely by payment of claims for occurrences which take place during this policy period. Failure of the insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the company shall only be liable to the same extent as it would have been if the insured had complied with this condition.

It Witness Whereof, The issuing Company has caused this policy to be signed officially below and countersigned on the declarations page by a duly authorized agent of said Company.

THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED

*Frank J. Carey*

*United States Manager and Attorney.*

AMERICAN EMPLOYERS' INSURANCE COMPANY

*Frank J. Carey*

*President.*

*J. Marshall Taylor*

*Secretary.*

CONFIDENTIAL

286
XCOPY

The Company issuing this policy
is indicated by the first letter in the
POLICY NUMBER, as follows:

E — EMPLOYERS COMMERCIAL UNION INS. CO. OF AMERICA
N — THE NORTHERN ASSUR. CO. OF AMERIC
A — AMERICAN EMPLOYERS' INS. CO.
F — THE EMPLOYERS' FIRE INS. CO.

POLICY NO.
EY-8009-081

| AGENCY SYMBOL | AGCY. CODE | PRODUCER CODE | STATE | CITY | CLASS | LMTS. | EXPOSURE | GRP. CODE | AGENT OR BROKER |
|---|---|---|---|---|---|---|---|---|---|
| | 66666 | 31 | '00 | 8888 | 0 | 00 | 20 | John C. Paige & Company |

| SUB-AGENT OR BROKER | COMM. | RENEWAL OF OR PREV. NO. | DATE ISSUED | GL % | GFD % | X % | XPD % | OTHER % |
|---|---|---|---|---|---|---|---|---|
| | | EY-8009-073 | 3/20/70 | 50 | 30 | 10 | 10 | |

## DECLARATIONS

ITEM 1.
Named Insured: Gulf & Western Industries, Inc.
and/or their subsidiaries and affiliates
Address: as now or hereafter constituted
437 Madison Avenue
New York, New York

POLICY FORM
G9024-4 ECU

ENDORSEMENTS
GU 8679a-G1616

Business of Insured   Mfgr. & Distr. of Auto Parts, etc.

ITEM 2.   Policy Period: From February 1, 1970 to February 1, 1973   12:01 A. M.
standard time at the address of the named insured as stated herein.

ITEM 3.   Underlying Insurance

| Coverage | Limits of Liability |
|---|---|
| Comprehensive General Liability Including Blanket Contractual Malpractice Care, Custody and Control | $ 1,000,000.00 Combined Single Limit Personal Injury and Property Damage each occurrence and in the aggregate |
| Automobile Liability | $ 1,000,000.00 Combined Single Limit Bodily Injury and Property Damage each accident |
| Employers Liability Including FELA & Long Shore & Harbor Workers | $ 100,000.00 each accident |
| Advertisers Liability | $ 1,000,000.00 each occurrence |
| Aviation Liability | $10,000,000.00 Combined Single Limit each accident |

- continued -

ITEM 4.   Underlying Limits   $ 25,000.00

ITEM 5.   Limits of Liability—Ultimate Net Loss
$ 5,000,000.00   each occurrence
$ 5,000,000.00   aggregate

ITEM 6.   Premium   $ 50,000.00 Minimum & Deposit

Item 7.   Rate:  .01 per $100.00 of total adjusted Workmen's Compensation Payroll adjustable annually.
3/20/70 C

CONFIDENTIAL

OB0024

Named Insured   **Gulf & Western Industries, Inc.**        Policy No. EY-8009-081

ITEM 3.   Underlying Insurance Continued

| Coverage | Limits of Liability |
|---|---|
| Protection & Indemnity | $   300,000.00 Combined Single Limit each accident |
| Bill of Lading Liability | |
| Legal Liability - Foreign | $   100,000.00 each claim |
| Railroad Stock | $    25,000.00 each claim |
| ←Charterers Liability | $   300,000.00 each claim |
| ←~~Liquor Law for Race Tracks~~ deleted | $   ~~300,000.00 each claim~~ (End. 10) |
| Aviation Products (AEG) | $50,000,000.00 (See End. 8) ~~$20,000,000.00 each accident~~ |
| Paramount Pictures E & O | $ 1,000,000.00 ~~1,500,000.00~~ each claim (End. 10) $ 5,000,000.00 aggregate |
| Airport Liab. (LaRomana) See End. 13 | |

Page 2

1024R-3  Supplement

CONFIDENTIAL                                                   OB0025

Named Insured   Gulf & Western Industries, Inc.                    Policy No. EY-8000-081

ITEM 3.   Underlying Insurance Continued

| Coverage | Limits of Liability |
|---|---|
| Protection & Indemnity | $ 300,000.00 Combined Single Limit each accident |
| Bill of Lading Liability | |
| Legal Liability - Foreign | $ 100,000.00 each claim |
| Railroad Stock | $ 25,000.00 each claim |
| ← Charterers Liability | $ 300,000.00 each claim |
| ~~Liquor Law for Race Tracks~~ deleted | $ ~~300,000.00~~ each claim (End. 10) |
| Aviation Products (APL) | ~~$20,000,000.00~~ $50,000,000.00 (See End. #8) each accident |
| Paramount Pictures E & O | $ ~~500,000.00~~ 1,000,000.00 each claim (End. 10) $ 5,000,000.00 aggregate |

Airport Liab
(Takeoway)  See End. 13

Page 2

CONFIDENTIAL

OB0026

# EXHIBIT
# 16

**Exhibit 16**

# UNIGARD MUTUAL INSURANCE COMPANY

## DECLARATIONS — PART B

NO. 1- 0542

#342

| AMOUNT | RATE | PREMIUM |
|---|---|---|
| $20 MILLION | AS | $AS PER |
| $ | AGREED | $END. #1 |
| $ | | $ |
| $ | | $ |
| $ | | $ |
| TOTAL ▶ | | AS PER $END. #1 |

**ASSURED'S NAME** GULF + WESTERN INDUSTRIES, INC. AND/OR
THEIR SUBSIDIARIES AND AFFILIATES
AS NOW OR HEREAFTER CONSTITUTED

**ADDRESS**
ONE GULF + WESTERN PLAZA
NEW YORK, NEW YORK 10023

**POLICY PERIOD** FEBRUARY 1, 1973 TO JANUARY 1, 1976
FROM          TO

BOTH DAYS AT 12:01 A. M. (STANDARD TIME) AT THE LOCATION(S) OF THE RISK(S) INSURED AND IN ACCORD WITH THE TERMS AND CONDITIONS OF THE FORM(S) ATTACHED.

---

### COVERAGE

Swett & Crawford, Houston
17½%
New

ALLEN, MILLER AND ASSOCIATES, INC.
Underwriting Managers

HOW/bh

AUTHORIZED BY _____

THIS DECLARATIONS PAGE, WITH "POLICY PROVISIONS—PART A", AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE POLICY.

CONTROL NO. 0542

# UMBRELLA POLICY

## DECLARATIONS

ITEM 1. Named Assured:   GULF + WESTERN INDUSTRIES, INC. AND/OR THEIR SUBSIDIARIES AND AFFILIATES AS NOW OR HEREAFTER CONSTITUTED

ITEM 2.  Limit of Liability — as Insuring Agreement II.
   (a)  Limit in all in respect of each occurrence     $    20 MILLION
   (b)  Limit in the aggregate for each annual
      period where applicable     $    20 MILLION
   (c)  Self Insured Retention     $    25,000.00

ITEM 3.  Notice of Occurrence (Condition G) to:  ALLEN, MILLER AND ASSOCIATES, INC.

ITEM 4.  Currency (Condition Q):-  U. S. Dollars

ITEM 5.  Payment of Premium (Condition Q) to:  ALLEN, MILLER AND ASSOCIATES, INC.

## SCHEDULE OF UNDERLYING INSURANCES

SEE SCHEDULE ATTACHED

Named Assured:   As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company. (Hereinafter called the "Named Assured").

1-0542

Attached to and forming part of Policy No.

Issued to:  GULF + WESTERN INDUSTRIES, INC.
Dated:  FEBRUARY 1, 1973

ALLEN, MILLER AND ASSOCIATES, INC.
Underwriting Managers

By _____

(Provisions on pages 2, 3 and 4 are hereby referred to and made a part hereof.)

AMAI-6

SEA MW0000208

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability,

   (a)  Imposed upon the Assured by law,

or

   (b)  Assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of:—

(I) Personal Injuries, including death at any time resulting therefrom,
(II) Property Damage,
(III) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the world.

## II. LIMIT OF LIABILITY

The Company shall only be liable for the ultimate net loss the excess of either

   (a)  the limits of the underlying insurances as set out in the schedule in respect of each occurrence covered by said underlying insurances,

o   (b)  the amount as set out in the declarations as the self-insured retention in respect of each occurrence not covered by said underlying insurances,

(hereinafter called the "Underlying Limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each occurrence - subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurances by reason of losses paid thereunder, this policy shall

   (1) in the event of reduction pay the excess of the reduced underlying limit

   (2) in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase the Company's limit of liability.

## THIS POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS:

## 1. ASSURED —

The unqualified word "Assured", wherever used in this policy, includes not only the Named Assured but also —

(a) any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, and any organization or proprietor with respect to real estate management for the Named Assured;

(b) any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only in respect of operations by or on behalf of the Named Assured or of facilities of the Named Assured or used by them;

(c) any additional assured (not being the Named Assured under this policy) included in the Underlying Insurances, subject to the provisions in Condition B; but not for broader coverage than is available to such additional Assured under any underlying insurances as set out in attached Schedule;

(d) with respect to any automobile owned by the Named Assured or hired for use in behalf of the Named Assured, or to any aircraft owned by or hired for use in behalf of the Named Assured, any person while using such automobile or aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is with the permission of the Named Assured. The insurance extended by this sub-division (d), with respect to any person or organization other than the Named Assured, shall not apply —

1. to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

2. with respect to any aircraft, ... or any aviation sales or service or repair organization or airport or hangar operator, or their respective employees or agents with respect to any occurrence arising out of the operation thereof;

3. with respect to any hired automobile or aircraft, to the owner thereof or any employee of such owner. This sub-division (d) shall not apply if it restricts the insurance granted under sub-division (c) above.

## 2. PERSONAL INJURIES —

The term "Personal Injuries" wherever used herein means bodily injury, mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, discrimination, humiliation, also libel, slander or defamation of character or invasion of rights of privacy, except that which arises out of any Advertising activities.

## 3. PROPERTY DAMAGE —

The term "Property Damage" wherever used herein shall mean loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured).

## 4. ADVERTISING LIABILITY —

The term "Advertising Liability" wherever used herein shall mean:

(a) Libel, slander or defamation;

(b) Any infringement of copyright or of title or of slogan;

(c) Piracy or unfair competition or idea misappropriation under an implied contract;

(d) Any invasion of right of privacy;

committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Assured's Advertising activities.

## 5. OCCURRENCE —

The term "Occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

## 6. ULTIMATE NET LOSS —

The term "Ultimate Net Loss" shall mean the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Assured's or of any underlying insurer's permanent employees.

The Company shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

## 7. AUTOMOBILE —

The term "Automobile", wherever used herein, shall mean a land motor vehicle, trailer or semi-trailer.

## 8. AIRCRAFT —

The term "Aircraft", wherever used herein, shall mean any heavier than air or lighter than air aircraft designed to transport persons or property.

## 9. PRODUCTS LIABILITY —

The term "Products Liability" means

(a) Liability arising out of goods or products manufactured, sold, handled or distributed by the Named Assured or by others trading under his name if the occurrence occurs after possession of such goods or products has been relinquished to others by the Named Assured or by others trading under his name and if such occurrence occurs away from

reasonably conclude that an occurrence covered hereunder involves injuries or damages covered in this Policy, notice shall be sent as stated in Item 3 of the declarations as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

**H. ASSISTANCE AND CO-OPERATION —**

The Company shall not be called upon to assume charge of the settlement of defense of any claim made or suit brought or proceeding instituted against the Assured but the Company shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve the Company, in which event the Assured and the Company shall co-operate in all things in the defense of such claim, suit or proceeding.

**I. APPEALS —**

In the event the Assured or the Assured's underlying insurers elect not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at their cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Insuring Agreement II for any one occurrence and in addition the cost and expense of such appeal.

**J. LOSS PAYABLE —**

Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a definite claim for any loss for which the Company may be liable under the policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and the Company. If any subsequent payments shall be made by the Assured on account of the same occurrence additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

**K. BANKRUPTCY AND INSOLVENCY —**

In the event the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**L. OTHER INSURANCE —**

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

**M. SUBROGATION —**

Inasmuch as this policy is "Excess Coverage", the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Company. It is, therefore, understood and agreed that

recovered shall follow the principle that any interests (including the Assured) suffering any loss and entitled to participate in and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

**N. CHANGES —**

Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Company.

**O. ASSIGNMENT —**

Assignment of interest under this policy shall not bind the Company unless and until their consent is endorsed hereon.

**P. CANCELLATION —**

This policy may be cancelled by the Named Assured or by the Company or their representatives by sending to the other party stating when, not less than ten (10) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representatives to the Named Assured at the address shown in this policy shall be sufficient proof of notice; and the insurance under this policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Company or their representatives shall be equivalent to mailing.

If this policy shall be cancelled by the Named Assured the Company shall retain the customary short rate proportion of the premium for the period this policy has been in force. If this policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium with such notice.

**Q. CURRENCY —**

The premiums and losses under this policy are payable in the currency stated in Item 4 of the Declarations. Payment of Premium shall be made as stated in Item 5 of the Declarations.

**R. CONFLICTING STATUTES —**

In the event that any provision of this policy is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby, because of non-compliance with any statute thereof, then this policy shall be enforceable by the Assured with the same effect as if it complied with such statute.

**S. MAINTENANCE OF UNDERLYING INSURANCES —**

It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and or occurrences occurring during the period of this policy. Failure of the Assured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as they would have been had the Assured complied with the said condition.

3-287

SEA  MW0000210

premises owned, rented or controlled by th ... id Assured; provided such goods or products shall be deemed ... include any container thereof, other than a vehicle but shall include any vending machine or any property, other than such container, rented to or located for use or others but not sold;

(b) Liability arising out of operations, if the occurrence occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Named Assured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further the following shall not be deemed to be "operations" within the meaning of this paragraph: (i) pick-up or delivery, except from or onto a railroad car, (ii) the maintenance of vehicles owned or used by or in behalf of the Assured, (iii) the existence of tools, uninstalled equipment and abandoned or unused materials.

10. ANNUAL PERIOD —

The term "each Annual Period" shall mean each consecutive period of one year commencing from the inception date of this Policy.

THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS:

This policy shall not apply:—

(a) to any obligation for which the Assured or any company as its insurer may be held liable under any Workmen's Compensation, unemployment compensation or disability benefits law provided, however, that this exclusion does not apply to liability of others assumed by the Named Assured under contract or agreement;

(b) to claims made against the Assured;

(i) for repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement;

(ii) for the loss of use of any such defective product or products or part or parts thereof;

(iii) for improper or inadequate performance, design or specification; but nothing herein contained shall be construed to exclude claims made against the Assured for personal injuries or property damage (other than damage to a product of the Assured) resulting from improper or inadequate performance, design or specification;

(c) with respect to advertising activities, to claims made against the Assured for:

(i) failure of performance of contract, but this shall not relate to claims for unauthorized appropriation of ideas based upon alleged breach of an implied contract;

(ii) infringement of registered trade mark, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii) incorrect description of any article or commodity;

(iv) mistake in advertised price;

(d) except in respect of occurrences taking place in the United States of America, its territories or possession, or Canada, to any liability of the Assured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

Except insofar as coverage is available to the Assured in the underlying insurances as set out in the attached Schedule, this policy shall not apply:—

(e) to liability of any Assured hereunder for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing personal injury or property damage; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above.

(f) with respect to air ... owned by the Assured except liability of the Named Assured but shall not apply with it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(g) with respect to any watercraft owned by the Assured, while away from premises owned, rented or controlled by the Assured, except liability of the Named Assured for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the Named Assured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(h) to any employee with respect to injury to or the death of another employee of the same Employer injured in the course of such employment.

THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS —

A. PREMIUM —

Unless otherwise provided for the premium for this Policy is a flat premium and is not subject to adjustment except as provided in Conditions B AND P.

B. In the event of additional assureds being added to the coverage under the Underlying insurances during currency hereof prompt notice shall be given to the Company hereon and if an additional premium has been charged for such addition on the Underlying Insurances, the Company shall be entitled to charge an appropriate additional premium hereon.

C. PRIOR INSURANCE NON CUMULATION OF LIABILITY —

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability herein as stated in Item 2 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this policy the Company will continue to protect the Assured for liability in respect of such personal injury or property damage without payment of additional premium.

D. SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE —

As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Assured, this policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the underlying insurances prior to the happening of an occurrence for which claim is made hereunder.

E. INSPECTION AND AUDIT —

The Company shall be permitted at all reasonable times during the policy period to inspect the premises, plants, machinery and equipment used in connection with the Assured's business, trade or work, and to examine the Assured's books and records at any time during the currency hereof and within one year after final settlement of all claims so far as the books and records relate to any payments made on account of occurrences happening during the term of this policy.

F. CROSS LIABILITY —

In the event of claims being made by reason of personal injuries suffered by any employee or employees of one Assured hereunder for which another Assured hereunder is or may be liable, then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

In the event of claims being made by reason of damage to property belonging to any Assured hereunder for which another Assured is, or may be, liable then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Assured hereunder.

Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement II.

SEA  MW0000211

SCHEDULE OF UNDERLYING INSURANCE

<u>DOMESTIC (U. S., CANADA, P.R.)</u>

| | |
|---|---|
| EMPLOYER'S LIABILITY - COV. B | $100,000 |
| COMPREHENSIVE LIABILITY | $1,000,000 COMBINED SINGLE LIMIT |
| COMPREHENSIVE AUTO LIABILITY | $1,000,000 COMBINED SINGLE LIMIT |
| AIRPORT LIABILITY | $1,000,000 COMBINED SINGLE LIMIT |
| AIRCRAFT LIABILITY (FLEET) OWNED AND NON-OWNED | $10,000,000 |
| REAL AND PERSONAL PROPERTY OWNED, LEASED AND ASSUMED LIABILITY - BLANKET COVERAGE | |
| BILL OF LADING LIABILITY (CHESTNUT RIDGE RAILROAD) LEGAL LIABILITY | $100,000 |
| CHARTER'S LIABILITY | $300,000 |

<u>FOREIGN (OTHER THAN DOMINICAN REP. AND G + W INDONESIA</u>

| | |
|---|---|
| EMPLOYER'S LIABILITY - COV. B | $100,000 |
| COMPREHENSIVE GENERAL LIABILITY | $100,000/$300,000 BODILY INJURY $100,000/$100,000 PROPERTY DAMAGE |
| COMPREHENSIVE AUTO LIABILITY | $100,000/$300,000 BODILY INJURY $100,000 PROPERTY DAMAGE |

<u>DOMINICAN REPUBLIC</u>

| | |
|---|---|
| EMPLOYER'S LIABILITY | $100,000 |
| COMPREHENSIVE GENERAL LIABILITY | $250,000/$500,000/$500,000 B. I. $250,000/$250,000 P. D. |
| COMPREHENSIVE AUTO LIABILITY | $250,000/$500,000 B. I. $100,000 P. D. |
| P & I | $300,000 |
| AIRPORT LIABILITY | $500,000/$1,000,000 B. I. $250,000 P. D. |

<u>GULF + WESTERN INDONESIA</u>

| | |
|---|---|
| EMPLOYER'S LIABILITY | $100,000 |
| COMPREHENSIVE GENERAL LIABILITY | $100,000/$100,000/$300,000 B. I. $100,000/$100,000 P. D. |
| COMPREHENSIVE AUTO LIABILITY | $100,000/$300,000 B. I. $100,000 P. D. |
| P & I | $300,000 (INCLUDING HULL) |

<u>WORLDWIDE</u>

| | |
|---|---|
| ADVERTISERS LIABILITY | $1,000,000 EACH OCCURRENCE |

SEA  MW0000212

# EXHIBIT
# 17

**Exhibit 17**

115281

| RENEWAL OF NEW | REWRITE OF | PRODUCER ESCO INSURANCE SERVICES, INC. | 354 XCOPY. |
|---|---|---|---|

| PRODUCER'S | PRODUCERS COMM. | NET DUE FROM PRODUCERS | BY | | EXTRA COPIES 6 |
|---|---|---|---|---|---|
| 7.5 | $36,475.00 | $474,525.00 | RPK/VB 2/25/76 | | COPIES TO |

| PREMIUM | CODE | AMOUNT | CO. CODE 96 | SMC COMM. % | NET PAYABLE | AUDIT ☐ A. ☐ S. ☐ Q. ☐ M. ☐ N MONTH DUE |
|---|---|---|---|---|---|---|

| BRANCH | PRODUCER | TRANS. | STATE | RENEWED BY | ELEVATORS INSPECTION ORDERED |
|---|---|---|---|---|---|

"NUCLEAR INCIDENT" EXCLUSION ENDORSEMENT DIRECT (BROAD) ATTACHED TO ORIGINAL CERTIFICATE"

**DECLARATIONS**

GULF + WESTERN INDUSTRIES, INC. AND/OR THEIR SUBSIDIARIES
AND AFFILIATES AS NOW OR HEREAFTER CONSTITUTED
C/O GULF + WESTERN INSURANCE DEPARTMENT
P. O. BOX 27128, HOUSTON, TEXAS 77027

UMBRELLA LIABILITY

NINE HUNDRED THOUSAND DOLLARS ($900,000.00) PART OF ONE
MILLION DOLLARS ($1,000,000.00)

INFORMATION HERE ABBREVIATED IN EVENT OF INCONSISTENCY WITH WORDINGS AND/OR ENDORSEMENTS ATTACHED HERETO, SAID WORDINGS AND/OR ENDORSEMENTS PREVAIL

COMMENCING JANUARY 1, 1976        ENDING JANUARY 1, 1977
12 01 A.M. STANDARD TIME AT THE PLACE OF LOCATION OF RISKS INSURED

MINIMUM AND
DEPOSIT PREMIUM                     TOTAL

$513,000.00                          $513,000.00

SWETT & CRAWFORD OF TEXAS
MARSH INSURANCE COMPANY

DATED AT DALLAS, TEXAS   THIS 25TH DAY OF FEB, 1976.   BY
AUTHORIZED REPRESENTATIVE
FLOYD ARTHUR HANSON, JR.

PRODUCER'S COPY

CONFIDENTIAL        P 006781

No. 115281

CONFIDENTIAL

VIA-INS 004374

CNA0018

HARBOR INSURANCE COMPANY

4701 BOULEVARD LOS ANGELES CALIFO    916.

(A Stock Insurance Company, herein called "The Company")

Agrees with the insured named in the declarations made a part of this policy thereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations to provide insurance in the extent of remittance with the terms stated in the declarations and in the documents attached herein or incorporated in this policy, subject to the undermentioned GENERAL POLICY CONDITIONS.

A.  CANCELLATION. This policy may be cancelled by the named insured by surrender thereof to the company or representative or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

B.  CHANGES. The terms of this policy shall not be waived or changed, except by endorsement issued to form a part of this policy, signed by the duly authorized representative of the company.

C.  This policy shall not be assigned in whole or in part without the written consent of the company or its authorized representative.

D.  Loss of or damage to property insured occasioned by war, invasion, acts of foreign enemies, civil war, rebellion, insurrection, mutiny or usurped power martial law or confiscation by order of any government or public authority not covered.

E.  This insurance is made and accepted subject to all the provisions, conditions and warranties set forth herein and in any terms or endorsements attached hereto, all of which are to be considered as incorporated herein and any provisions or conditions appearing in any terms or endorsements attached hereto when other the policy provisions stated above shall supersede such policy provisions in so far as they are inconsistent therewith

IN WITNESS WHEREOF, The Harbor Insurance Company has caused this policy to be signed by its President and Secretary, but the policy shall not be binding upon the company unless countersigned by a duly authorized representative of the company.

_____    _____
Secretary                                                       President

DECLARATIONS

| | | |
|---|---|---|
| NAMED INSURED | GULF + WESTERN INDUSTRIES, INC. AND/OR THEIR SUBSIDIARIES AND AFFILIATES AS NOW OR HEREAFTER CONSTITUTED C/O GULF + WESTERN INSURANCE DEPARTMENT P. O. BOX 27128, HOUSTON, TEXAS 77027 | No. ⇨  119281 |

| TYPE OF COVERAGE | UMBRELLA LIABILITY | INFORMATION HERE ABBREVIATED EVENT OF INCONSISTENCY WITH WORDINGS AND/OR ENDORSEMENTS ATTACHED HERETO, SAID WORDINGS AND/OR ENDORSEMENTS PREVAIL |
|---|---|---|
| LIMIT OF LIABILITY | NINE HUNDRED THOUSAND DOLLARS ($900,000.00) PART OF ONE MILLION DOLLARS ($1,000,000.00) | |

| PERIOD OF INSURANCE | COMMENCING JANUARY 1, 1976 | ENDING JANUARY 1, 1977 |
|---|---|---|

12:01 A.M. STANDARD TIME AT THE PLACE OF LOCATION OF RISKS INSURED

| MINIMUM AND DEPOSIT PREMIUM | TOTAL |
|---|---|
| $513,000.00 | $513,000.00 |

SWETT & CRAWFORD OF TEXAS
HARBOR INSURANCE COMPANY

By _____
AUTHORIZED REPRESENTATIVE
FLOYD ARTHUR HANSON, JR.

DATED AT  DALLAS, TEXAS        THIS 25TH  DAY OF FEB, 1976.

ORIGINAL

CONFIDENTIAL          P 006782

VIA-INS 004375

CONFIDENTIAL                              CNA0019

## UMBRELLA POLICY

### DECLARATIONS

ITEM 1.   Named Insured   GULF + WESTERN INDUSTRIES, INC. AND/OR THEIR SUBSIDIARIES AND AFFILIATES AS NOW OR HEREAFTER CONSTITUTED

ITEM 2.   Limit of Liability—as Insuring Agreement II.
(a)   Limit in all in respect of each occurence·   $900,000. P/O   $1,000,000.00
(b)   Limit in the aggregate for each annual period where applicable   $900,000. P/O   $1,000,000.00

ITEM 3.   Notice of Occurrence (Condition G) to:—   SWETT & CRAWFORD
3 GREENWAY PLAZA EAST, SUITE #900
HOUSTON, TEXAS  77046

ITEM 4.   Currency (Condition Q):—   UNITED STATES

ITEM 5.   Payment of Premium (Condition Q):—   SWETT & CRAWFORD

### SCHEDULE OF UNDERLYING POLICIES

SEE SCHEDULE ATTACHED

ATTACHING TO AND FORMING PART OF   119281
POLICY NUMBER

SWETT & CRAWFORD OF TEXAS
HARBOR INSURANCE COMPANY

DATED   DALLAS, TX   THIS   25TH   DAY OF   FEB., 1976   BY

MH FORM CCS (Revised 8-75) (1 of 5)

CONFIDENTIAL        P 006783

VIA-INS 004376

CONFIDENTIAL                                CNA0020

NAMED INSURED (as stated in Item 1 of the Declarations forth ... is hereof and/or subsidiary, associated, affiliated com ... owned and controlled companies as now ... hereafter constituent and of which present policy has been ... e the Company (hereinafter called the "Named Insured"

## INSURING AGREEMENTS

### 1. COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability

  (a) imposed upon the Insured by law,

  or (b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured while acting in his capacity as such,

for damages on account of

  (i) Personal Injuries;
  (ii) Property Damage;
  (iii) Advertising Liability;

caused by or arising out of each occurrence happening anywhere in the world during the policy period.

### LIMIT OF LIABILITY

The Company hereon shall only be liable for the Ultimate Net Loss the excess of either

  (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances;
  or (b) $25,000 Ultimate Net Loss in respect of each occurrence not covered by said underlying insurances

(hereinafter called the "underlying limits"),

and then only up to a further sum as stated in Item 2 (a) of the Declarations in all in respect of each occurrence—subject to a limit as stated in Item 2 (b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products and Completed Operations Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Insured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this Policy, subject to all the terms, conditions and definitions hereof, shall

  (1) in the event of reduction pay the excess of the reduced underlying limit;
  (2) in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's limits of liability beyond those set forth in the Declarations.

## POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS.

### INSURED

The unqualified word "Insured" wherever used in this Policy, includes—

  (a) The Named Insured, and, if the Named Insured is designated in Item 1 of the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

  (b) any officer, director, stockholder, partner or employee of the Named Insured, while acting in his capacity as such, and any organization or property for which real estate management for the Named Insured;

  (c) any person, organization, trustee or estate to whom the Named Insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this Policy, but only to the extent of such obligation and in respect of operations for or on behalf of the Named Insured or of facilities of the Named Insured or of facilities used by the Named Insured;

  (d) any additional Insured (not being the Named Insured under this Policy) included in the Underlying Insurances, subject to the provisions in Condition B, but not for broader coverage than is available in such additional insured under any underlying insurances as set out in attached schedule,

  (e) with respect to any automobile owned by the Named Insured or hired for use on behalf of the Named Insured, or by any aircraft owned by or hired for use in behalf of the Named Insured, any person while using such automobile or aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is with the permission of the Named Insured. The insurance extended by this sub-division (e), with respect to any person or organization other than the Named Insured shall not apply—

    1) to any person or organization, or to any agen ... employee thereof,

operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

  2. to any manufacturer of aircraft, aircraft engines, or aviation accessories, or any aviation sales or service or repair organization or airport or hangar operator or their respective employees or agents with respect to any occurrence arising out of any of the aforementioned;

  3. with respect to any hired automobile or aircraft, to the owner thereof or any employee of such owner. This sub-division (e) shall not apply if it restricts the insurance granted under sub-division (d) above;

  4. with respect to any non-owned automobile to any officer, director, stockholder, partner or employee of the Named Insured if such automobile is owned in full or in part by him or a member of his household.

### 2. PERSONAL INJURIES

The term "Personal Injuries" wherever used herein means (1) bodily injury, sickness, disease or disability or shock, including death arising therefrom, or, arising out of the foregoing, mental anguish and mental injury; (2) false arrest, false imprisonment, wrongful eviction, wrongful detention, or malicious prosecution; or (3) libel, slander, defamation of character, humiliation, or invasion of the rights of privacy, except that which arises out of any advertising activities; and (4) legal or religious discrimination not committed by or at the direction of the Insured or any executive officer, director or stockholder thereof, but only with respect to the liability other than fines and penalties imposed by law, caused by an occurrence during the policy period.

### 3. PROPERTY DAMAGE

The term "Property Damage" wherever used herein means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

### 4. ADVERTISING LIABILITY

The term "Advertising Liability" wherever used herein shall mean

  (1) Libel, slander or defamation;
  (2) Any infringement of copyright or of title or of slogan;
  (3) Piracy or unfair competition or idea misappropriation under an implied contract;
  (4) Any invasion of right of privacy;

committed or alleged to have been committed during the policy period in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

### 5. OCCURRENCE

The term "Occurrence" wherever used herein means an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured.

With respect to personal injury and property damage, all of such injury arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence.

With respect to advertising liability, all ultimate net loss arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency or repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be deemed to arise out of one occurrence.

### 6. DAMAGES

The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of or injury resulting from property damage.

### 7. ULTIMATE NET LOSS

The term "Ultimate Net Loss" shall mean the total sum which the Insured, or any Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries, property damage or advertising liability claims either through adjudication or compromise, and it also includes hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and

CONFIDENTIAL          P  006784

VIA-INS 004377

CONFIDENTIAL                                    CNA0021

The Company shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

8. **AUTOMOBILE**

The term "Automobile" wherever used herein, shall mean a land motor vehicle, trailer or semi-trailer.

9. **AIRCRAFT**

The term "Aircraft" wherever used herein, shall mean any heavier than air or lighter than air aircraft designed to transport persons or property.

10. **PRODUCTS LIABILITY**

The term "Products Liability" shall mean personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others

"Named Insured's products" means goods or products manufactured, sold, handled, or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's Products" shall not include a vending machine or any property other than such container, rented to or located for use at others but not sold

11. **COMPLETED OPERATIONS LIABILITY**

The term "Completed Operations Liability" shall mean personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time in respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed

Completed Operations Liability does not include personal injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials

12. **ANNUAL PERIOD**

The term "Annual Period" shall mean each consecutive period of one year commencing from the inception date of this Policy.

**THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS**

This Policy shall not apply—

(a) to any obligation for which the Insured and any Company as its insurer may be held liable under any Workmen's/Workers' Compensation, Unemployment Compensation or Disability Benefits Law, or any similar Law, provided, however, that this exclusion does not apply to liability of others assumed by the Named Insured under contract or agreement;

(b) to personal injury or property damage of advertising injury arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this Policy as a Named Insured;

(c) ...

(a) ... performance or on behalf of the Named Insured of ... act or agreement, or

... the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured,

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(d) to property damage to the Named Insured's products arising out of such products or any part of such products;

(e) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith,

(f) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(g) to property damage to property owned by the Insured;

(h) to personal injury or property damage arising out of the discharge, dispersal, release or escape of:

(i) smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(ii) oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon any watercourse or body of water, whether or not such discharge, dispersal, release or escape is sudden and accidental, but this exclusion (ii) shall apply only with respect to operations described as follows:

**Description of Operations**

Gasoline Recovery—from casing head or natural gas
Non operating working interests
Oil or Gas Well Shooting
Oil or Gas Wells—acidizing
Oil or Gas Wells—cementing
Oil or Gas Wells—cleaning or swabbing—by contractors
Oil or Gas Wells—servicing—by contractors
Oil or Gas Wells—drilling or redrilling, installation or recovery of casing
Oil or Gas Wells—instrument logging or survey work in wells
Oil or Gas Wells—perforating of casing
Oil Lease Operators or Gas Lease Operators—natural gas
Oil Pipe Lines—operation, including maintenance
Oil Rig or Derrick Erecting or Dismantling—wood or metal—including construction of foundations or structures or installation of equipment
Oil Refining—Petroleum
Other Petrochemical Operations
Chemical Manufacturing

(c) with respect to advertising activities, to claims made against the Insured for:

(i) failure of performance of contract, but this shall not relate to claims for unauthorized appropriation of ideas based upon alleged breach of an implied contract;

(ii) infringement of registered trade marks, service mark or trade name by use thereof as the registered trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

(iii) incorrect description of any article or commodity;

(iv) mistake in advertised price.

(d) except in respect of occurrences taking place in the United States of America, its territories or possessions, or Canada, to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition

(b) to any liability arising out of the violation of any statute, law, ordinance or regulation prohibiting discrimination or humiliation because of race, creed, color or national origin.

Except insofar as coverage is provided for the Insured in the underlying insurances as set out in the Schedule, this Policy shall not apply:

(e) (i) to the liability of any Insured hereunder for assault and battery committed by or at the direction of such Insured except bodily for Personal Injuries resulting from any act alleged to be assault and battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing Personal Injuries or Property Damage, it being understood and agreed that this exclusion shall not apply to the liability of the Names Insured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(f) with respect to any aircraft owned by the Named Insured for aircraft not owned by them, it being understood and agreed that this exclusion shall not apply to the liability of the Named Insured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(g) with respect to any watercraft owned by the Insured, while away from premises owned, rented or controlled by the Insured, except liability of the Named Insured for watercraft not owned by them if being understood and agreed that this exclusion shall not apply to the liability of the Named Insured for personal injury to their employees, unless such liability is already excluded under Exclusion (a) above;

(h) to any employee with respect to injury to or the death of another employee in the same Employer injured in the source of such employment.

**THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS**

**A. PREMIUM**
Unless otherwise provided for the premium for this Policy is a flat premium and is not subject to adjustment except as provided in Conditions B and P.

**B. ADDITIONAL INSURERS**
In the event of additional Insureds being added to the coverage under the Underlying Insurances during currency hereof prompt notice shall be given to the Company hereon who shall be entitled to charge an appropriate additional premium hereon.

**C. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY**
It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof the limit of liability hereon as stated in item 2 of the Declarations shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

**D. SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE**
As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Insured, this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amounts and limits of liability and the renewal agreement, if any), as are contained in or as may be added to the underlying insurances prior to the happening of an occurrence for which claim is made hereunder.

**E. INSPECTION AND AUDIT**
The Company shall be permitted but not obligated to inspect the Named Insurer's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The Company may examine and audit the Insured's books and records at any time during the Policy period and extensions thereof and within three years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.

**F. CROSS LIABILITY**
In the event of claims being made by reason of personal injury suffered by any employee of one Insured hereunder for which another Insured hereunder is or may be liable, then this Policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured hereunder.

In the event of claims being made by reason of damage to property belonging to any Insured hereunder for which another Insured is, or may be, liable then this Policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured hereunder.

Nothing contained herein ... concile to increase the Company's limit of liability as set forth in Insuring Agreement 2

**G. NOTICE OF OCCURRENCE**
Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Insured should be held liable, is likely to involve this Policy, notice shall be sent as stated in item 5 of the Declarations as soon as practicable provided, however that failure to ... notice of any occurrence which at the time of its happening did not appear to involve this Policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

**H. ASSISTANCE AND CO-OPERATION**
The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve the Company, in which event the Insured and the Company shall co-operate in all things in the defense of such claim, suit or proceeding.

**I. APPEALS**
In the event the Insured or the Insured's underlying insurers elect not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its own cost and expense, and shall be liable for the taxable costs and disbursements and interest on judgments incident thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Insuring Agreement 2 for any one occurrence and in addition the cost and expense of such appeal.

**J. LOSS PAYABLE**
Liability under this Policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under the Policy within twelve (12) months after the Insured shall have paid an amount of ultimate net loss in excess of the amount borne by the Insured or when the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Company. If any subsequent payments shall be made by the Insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this Policy.

**K. BANKRUPTCY AND INSOLVENCY**
In the event of the bankruptcy or insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**L. OTHER INSURANCE**
If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is specifically stated to be excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

**M. SUBROGATION**
Inasmuch as this Policy is "Excess Coverage" the Insured's right of recovery against any person or other entity cannot be exclusively subrogated to the Company. It is, therefore, understood and agreed that in case of any payment hereunder, the Company will act in concert with all other interests (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them, the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

**N. CHANGES**
Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this Policy or stop the Company from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by endorsement issued in form a part hereof, signed by an authorized representative of the Company.

**O. ASSIGNMENT**
Assignment of interest under this Policy shall not bind the Company unless and until its consent is endorsed hereon.

CONFIDENTIAL          P 006786

VIA-INS 004379

P. **CANCELLATION**

This ?..eguli.cy, at cancel... .r the Named .nsti.... surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this Policy written notice stating when not less then thirty days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the Policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

In the event that the Company or its authorized representative has issued or may issue, at the request of the insured, certificates of insurance and/or statutory filings and/or other evidences of insurance (hereinafter referred to as certificates) under this Policy which certificates require the Company to give advance notice of cancellation to the recipients of such certificates or others, then the insured, if it should elect to cancel this Policy, shall give the Company not less than the same advance notice of cancellation as is required to be given by the Company under such certificates and in doing so shall allow the Company not less than three business days for the preparation and mailing of such notices of cancellation to the recipients of such certificates.

Q. **CURRENCY**

The premiums and losses under this Policy are payable in the currency stated in Item 4 of the Declarations. Payment of premium shall be made as stated in Item 5 of the Declarations.

R. **CONFLICTING STATUTES**

In the event that any provision of this Policy is unenforceable by the Insured under the laws of any State or other jurisdiction wherein it is claimed that the Insured is liable for any injury covered hereby, because of non-compliance with any statute thereof, then this Policy shall be enforceable by the Insured with the same effect as if it complied with such Statute.

S. **MAINTENANCE OF AND I .... ORS IN UNDERLYING INSURANCES**

It is a condition of this Policy .... the Policy or Policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy. Failure of the Named Insured to comply with the foregoing shall not invalidate this Policy but in the event of such failure, the Company shall only be liable to the same extent as they would have been had the Named Insured complied with the said condition.

T. **SOLE AGENT**

The first Named Insured shall be deemed the sole agent of each and every Named Insured for the purposes of (1) giving notice of cancellation, either by the Company or the Named Insured, (2) giving instructions for changes in this policy, and (3) the payment of premiums or receipt of return premiums.

U. **ACTION AGAINST COMPANY**

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

CONFIDENTIAL          P 006787

VIA-INS 004380

CONFIDENTIAL                                    CNA0024

## SCHEDULE OF UNDERLYING INSURANCE

### DOMESTIC (U. S., CANADA, P. R.)

| | |
|---|---|
| EMPLOYER'S LIABILITY - COV. B | $100,000. |
| COMPREHENSIVE LIABILITY | $1,000,000. COMBINED SINGLE LIMIT |
| COMPREHENSIVE AUTO LIABILITY | $1,000,000. COMBINED SINGLE LIMIT |
| AIRPORT LIABILITY | $1,000,000. COMBINED SINGLE LIMIT |
| AIRCRAFT LIABILITY (FLEET) OWNED AND NON OWNED | $10,000,000. |
| REAL AND PERSONAL PROPERTY, LEASED AND ASSUMED LIABILITY | BLANKET COVERAGE UNDER GULF + WESTERN PROPERTY POLICIES |
| BILL OF LADING LIABILITY (CHESTNUT RIDGE RAILROAD) LEGAL LIABILITY | $100,000. |
| FOREIGN ROLLING STOCK | $100,000. |
| CHARTER'S LIABILITY | $300,000. |
| PRODUCER'S LIABILITY - PARAMOUNT PICTURES | $5,000,000. EACH CLAIM AND AGGREGATE |
| PRODUCER'S E & O - PARAMOUNT PICTURES | $1,000,000/$5,000,000 |

### FOREIGN (OTHER THAN DOMINICAN REPUBLIC)

| | |
|---|---|
| EMPLOYER'S LIABILITY - COV. B | $100,000. |
| COMPREHENSIVE GENERAL LIABILITY | $100,000./$300,000. BODILY INJURY<br>$100,000./$100,000. PROPERTY DAMAGE |
| COMPREHENSIVE AUTO LIABILITY | $100,000./$300,000. BODILY INJURY<br>$100,000. PROPERTY DAMAGE |

### DOMINICAN REPUBLIC

| | |
|---|---|
| EMPLOYER'S LIABILITY | $100,000. |
| COMPREHENSIVE GENERAL LIABILITY | $250,000./$500,000./$500,000. B. I.<br>$250,000./$250,000. P. D. |

Continued . . .

| | |
|---|---|
| COMPREHENSIVE AUTO LIABILITY | $250,000./$500,000. B. I.<br>$100,000. P. D. |
| P & I | $300,000. |
| AIRPORT LIABILITY | $500,000./$1,000,000. B. I.<br>$250,000. P. D. |
| WORLDWIDE | |
| ADVERTISER'S LIABILITY | $1,000,000. EACH OCCURRENCE |

ATTACHED TO AND FORMING A PART OF POLICY NO. 119281

ISSUED TO:  GULF + WESTERN INDUSTRIES, INC., ET AL

DATED:  JANUARY 1, 1976

SWETT & CRAWFORD OF TEXAS

BY: _____
FLOYD ARTHUR HANSON, JR.

CONFIDENTIAL        P 006789

VIA-INS 004382

CONFIDENTIAL

CNA0026