**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**EDNA K. MINEWEASER**
**Executrix of the Estate of**
**Paul J. Mineweaser, Deceased**
**and Individually as Surviving Spouse**

       **Plaintiff,**      **14-CV-0585A(Sr)**

**v.**

**ONE BEACON INSURANCE COMPANY;**

**RESOLUTE MANAGEMENT, INC.;**

**SEATON INSURANCE COMPANY,**
**Individually and as Successor to Unigard**
**Insurance Company;**

**CONTINENTAL INSURANCE COMPANY;**

**HARPER INSURANCE LIMITED,**
**formerly known as**
**Turegum Insurance Company;**

**and**

**ASSICURAZIONI GENERALI, SPA,**

       **Defendants.**

**EVA L. POWERS**
**Executrix of the Estate of**
**Arthur E. Neilson**

                      **Plaintiff,**                  **14-CV-1093A(Sr)**

**v.**

**ONE BEACON INSURANCE COMPANY,**

**RESOLUTE MANAGEMENT, INC.**
**Administrator for One Beacon America Insurance**
**Company;**

**SEATON INSURANCE COMPANY,**
**Individually and as Successor to Unigard**
**Insurance Company;**

**CONTINENTAL INSURANCE COMPANY**
**Individually and as Successor in Interest to**
**Harbor Insurance Company (CNA);**

**HARPER INSURANCE LIMITED;**

**and**

**ASSICURAZIONI GENERALI, SPA,**

                      **Defendants.**

---

**RHODA PEACE**
**Executrix of the Estate of**
**Hubert A. Peace ,**

                   **Plaintiff,**                               **15-CV-177A(Sr)**

**v.**

**ONE BEACON INSURANCE COMPANY,**

**RESOLUTE MANAGEMENT, INC.,**
**Administrator for One Beacon America**
**Insurance Company;**

**SEATON INSURANCE COMPANY,**
**Individually and as Successor to Unigard**
**Insurance Company;**

**CONTINENTAL INSURANCE COMPANY,**
**Individually and as Successor in Interest to**
**Harbor Insurance Company (CNA);**

**HARPER INSURANCE LIMITED,**
**formerly known as**
**Turegum Insurance Company;**

**ASSICURAZIONI GENERALI, SPA;**

**and**

**HEDMAN RESOURCES LTD[1]**

                   **Defendants.**

---

[1] Hedman has not appeared in this action.

---

**NANCY M. MUIR**
**Executrix of the Estate of**
**Joseph L. Muir, Deceased**

                         **Plaintiff,**                          **16-CV-89A(Sr)**

**v.**

**LAMORAK INSURANCE COMPANY,**
**formerly known as One Beacon Insurance Company;**

**RESOLUTE MANAGEMENT, INC.;**

**CONTINENTAL INSURANCE COMPANY (CNA);**

**PROVIDENCE WASHINGTON INSURANCE COMPANY,**
**formerly known as Seaton Insurance Company;**

**HARPER INSURANCE LIMITED;**

**and**

**ASSICURAZIONI GENERALI, SPA,**

                         **Defendants.**

---

### DECISION AND ORDER

      These matters were referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. 14-CV-0585 ("Mineweaser"), at Dkt. #41 & Dkt. #81; 14-CV-1093 ("Neilson"), at Dkt. #12; 15-CV-177 ("Peace"), at Dkt. #7 & Dkt. #16; and 16-CV-89 ("Muir"), at Dkt. #5.

Currently before the Court are Continental Insurance Company's ("Continental's"), motions to compel deposition testimony and the production of documents and privilege logs from plaintiffs (14-CV-585 at Dkt. #217; 14-CV-1093 at Dkt. #128; 15-CV-177 at Dkt. #122; and 16-CV-89 at Dkt. #94); Continental's motions to compel deposition testimony and production of a privilege log from Seaton Insurance Company ("Seaton") (14-CV-585 at Dkt. #223; 14-CV-1093 at Dkt. #134; 15-CV-177 at Dkt. #128; and 16-CV-89 at Dkt. #100); and Seaton's cross motions for a protective order. 14-CV-585 at Dkt. #227; 14-CV-1093 at Dkt. #138; 15-CV-177 at Dkt. #132; and 16-CV-89 at Dkt. #104. Plaintiffs filed a notice of joinder in Seaton's cross motion for a protective order. 14-CV-585 at Dkt. #237; 14-CV-1093 at Dkt. #148; 15-CV-177 at Dkt. #142; and 16-CV-89 at Dkt. #114. Continental opposes plaintiffs' joinder as untimely and argues that plaintiffs lack standing to oppose Continental's motion to compel against Seaton. Dkt. #240, p.2. Unless otherwise specified, going forward, the Court will refer solely to the docket entries in 14-CV-585, as the same documents were filed in each action.

## BACKGROUND

Plaintiffs commenced these actions against defendant insurance companies pursuant to New York Insurance Law § 3420, seeking payment of judgments entered against Hedman Resources, Ltd., formerly known as Hedman Mines, Ltd. ("Hedman"), the supplier of raw asbestos fiber to plaintiffs' employer, Durez Plastics ("Durez"), following plaintiffs' bodily injuries and subsequent deaths caused by exposure to Hedman's asbestos, and seeking a declaration that the insurance

companies' transfer of insurance funds to Hedman constituted fraudulent conveyances in violation of New York Debtor Creditor Law. Dkt. #1.

By Decision and Order entered November 5, 2021, the Hon. Richard J. Arcara adopted this Court's Report, Recommendation and Order, determining, *inter alia*, that "even though plaintiffs' personal injury claims did not accrue until discovery of injury from asbestos exposure, plaintiffs had each sustained injury as contemplated by Insurance Law § 3420 during the life of the relevant insurance policies and prior to the policy buybacks." Dkt. #174, p.8. In addition, the Court determined that because plaintiffs' rights under Insurance Law § 3420(a)(2) accrued at the time of injury, any subsequent settlement or release between the tortfeasor and the insurance company was not determinative of plaintiffs' rights. Dkt. #174, p.8. As a result, the Court determined that plaintiffs are entitled to recover their judgments from the excess insurers in accordance with the terms of the insurance policies. Dkt. #174, p.8. A motion for reconsideration of that Decision and Order is currently pending before Judge Arcara. Dkt. #177 & Dkt. #179.

On April 14, 2023, plaintiffs moved pursuant to Rule 54(b) of the Federal Rules of Civil Procedure for entry of monetary judgments against Continental in the following amounts: $2,798,735.75 for Mineweaser (14-CV-585 at Dkt. #203); $2,724,448.77 for Neilson (14-CV-1093 at Dkt. #114); $1,164,381.57 for Peace (15-CV-177 at Dkt. #108); and $7,132,601.31 for Muir. 16-CV-89 at Dkt. #80. Those motions are currently stayed pending resolution of these discovery motions. Dkt. #220.

-6-

By letter dated August 31, 2022, plaintiffs advised the Court that they had entered into a Funding Agreement with Enstar Holdings (US) LLF ("Enstar"), a company affiliated with Seaton, and that they would proceed against those insurers providing coverage for the year 1976, *to wit*, Continental, and two London market insurance companies, Harper and Assicurazioni Generali. Dkt. #223-7. Plaintiffs also advised that they had entered into a settlement agreement with Harper and Assicurazioni Generali. Dkt. #223-7. Plaintiffs' motions for voluntary dismissal of their claims against Harper and Assicurazioni Generali (Dkt. #207), are currently stayed pending resolution of these discovery motions. Dkt. #220.

The Funding Agreement provides that Enstar will provide funding to facilitate the prosecution of these actions against the insurers that provided insurance coverage to Gulf + Western Industries, Inc., together with its successors, predecessors, assigns, affiliates, affiliates of affiliates, parents and subsidiaries ("G+W"),[2] for the period of February 1, 1967 through December 31, 1979. Dkt. #219-1. Within 30 days of the execution of the Funding Agreement by all parties and plaintiffs' submission to the Court of a proposed order indicating the policy year for which they intend to pursue coverage for the underlying judgments, Enstar agreed to disburse $5 million to plaintiffs. Dkt. #219-1 & Dkt. #227-3, p.17. If plaintiffs chose to pursue coverage from the 1976 G+W policy year and secured a recovery from an insurer that issued policies covering that year, plaintiffs are required to disburse such funds to Enstar until they have repaid

---

[2] The Report, Recommendation & Order adopted by Judge Arcara determined that Hedman was an insured under these policies. Dkt. #159, pp.44-45 & Dkt. #174.

100% of the funding, without deduction. Dkt. #219-1. Any additional recoveries in excess of the funding are to be divided between plaintiffs and Enstar. Dkt. #219-1. If plaintiffs choose to pursue coverage from another policy year, plaintiffs are required to disburse 100% of such recovery to Enstar without deduction and with no subsequent division between plaintiffs and Enstar. Dkt. #219-1. The Funding Agreement specifies that plaintiffs retain sole control over the actions and may settle their claims with the insurers for any amount at their sole discretion. Dkt. #219-1.

On May 2, 2023, Continental served Notices of Deposition upon plaintiffs. Dkt. #217-12 thru Dkt. #217-15. Plaintiffs objected to their depositions on numerous grounds, including that the testimony related to litigation funding and settlement discussions are irrelevant to the proceedings, protected as attorney work product, subject to attorney-client privilege, and would require plaintiffs to opine on issues of law. Dkt. #217-17.

On May 5, 2023, Continental served a Second Request to Produce Documents upon plaintiffs seeking, *inter alia*, all documents relating to the Funding Agreement; all documents relating to any amounts paid to plaintiffs by or on behalf of Seaton pursuant to any Seaton insurance policy; any document relating to any amounts paid to plaintiffs pursuant to the judgments; and any documents relating to any commitments to pay or any amounts paid to plaintiffs with respect to these actions. Dkt. #271-8 thru Dkt. #217-16. Plaintiffs responded with objections, including that plaintiffs' negotiations and consideration of litigation financing are irrelevant to the

issues before the Court and protected as work product. Dkt. #217-20. Nonetheless, plaintiffs noted that those documents pertaining to the Funding Agreement which Continental was entitled to review had been filed with the Court. Dkt. #217-20. Plaintiffs also noted disclosure of the settlement with Harper and Assicurazioni Generali, as well as recovery from an asbestos bankruptcy trust by plaintiff Peace. Dkt. #217-20.

On May 15, 2023, Continental served a Request for Production of Documents and Interrogatories upon Seaton seeking documents relating to the terms and conditions of the Funding Agreement, including any draft of such agreement; communications between Seaton and any other person relating to the Funding Agreement; any money paid to plaintiffs by or on behalf of Seaton relating to or allcoated under any Seaton insurance policy and identification of all communications between Seaton and any other person relating to the Funding Agreement; any money paid by Seaton to any plaintiff in this action; any money Seaton is aware has been paid to plaintiffs by any person or entity; any agreement Seaton has entered into with any of the plaintiffs relating to the underlying judgments against Hedman; and whether any such payments eroded the limits available under any Seaton insurance policy. Dkt. #223-8 thru Dkt. #223-10.

Seaton objected to the discovery demands on the grounds that, *inter alia*,

Seaton is not a party to the Funding Agreement. Additionally, Seaton objects to this Request to the extent it calls for the production of documents that are protected by the attorney-client privilege, the work product doctrine, the common interest privilege and/or any similar privilege or

doctrine. Finally Seaton objects that this Request is improper
because Plaintiffs have moved to dismiss all claims against
Seaton with prejudice.

Dkt. #223-11 & Dkt. #223-12. Subject to such objections, Seaton responded that it did

not possess any responsive non-privileged documents or information "because there

were no 'amounts paid to [plaintiffs] by or on behalf of Seaton.'" Dkt. #223-11, pp.9-11.

Subject to the same objections, Seaton also responded that it was "not aware of any

money paid by or on behalf of Seaton to any of the [p]laintiffs in this case" or "relating . .

. to the Seaton policies" and "had not entered into any . . .agreements with [p]laintiffs"

concerning the judgments against Hedman. Dkt. #223-12, pp.6-9. More specifically,

Seaton reiterated, subject to its objections, that it was not aware of any "payments

and/or commitments to pay that have eroded or will erode the limits of the Seaton

policies." Dkt. #223-12, p.9.


      Continental also served a 30(b)(6) Notice on Seaton seeking deposition

testimony on the following topics:

> (1) The Funding Agreement, including, but not limited to (a)
> the negotiation of the Funding Agreement; (b) the terms and
> conditions of the Funding Agreement; (c) communications
> between any representatives of Seaton and any person
> relating to, concerning, discussing and/or addressing any
> proposed funding arrangement and the Funding Agreement;
>
> and
>
> (2) Any and all amounts paid to or for the benefit of any
> plaintiff [in these actions] as a result of the issuance of,
> relating in any way to, under and/or allocated to any Seaton
> Insurance Policy (ies) at issue.

Dkt. #223-10, p.8. Seaton objected to the deposition notice and advised that it would

not produce a witness, but reiterated "that no 'amounts' have been 'paid to or for the

benefit of any [p]laintiff . . . as a result of the issuance of, relating in any way to, under

and/or allocated to any Seaton [i]Insurance [p]olicy (ies) at issue in those lawsuits." Dkt.

#223-13, p.6.

On June 5, 2023, plaintiffs moved for voluntary dismissal of their claims

against Seaton given that Seaton's insurance policy terminated on January 1, 1976.

Dkt. #212. Those motions are currently stayed pending resolution of these discovery

motions. Dkt. #220.

Following a conference among counsel for the parties on July 13, 2023,

Seaton declined Continental's request for a privilege log because plaintiffs had moved

to dismiss their claims against Seaton with prejudice and no other party had asserted

any claims against Seaton, rendering any discovery sought from Seaton "unduly

burdensome, not proportional to the needs of the case and unduly prejudicial for the

simple reason that Seaton should no longer be in the case and should not be required

to incur expenses related to same." Dkt. #223-14. Seaton also noted that it is not a

party to the Funding Agreement and does not possess any responsive information or

relevant documents beyond what it has already disclosed, including its response that

"there have been no payments by or on behalf of Seaton to the plaintiffs that eroded the

limit of the Seaton policy." Dkt. #223-14. Therefore, Seaton stated it "has no documents

or communications to log." Dkt. #223-14. Finally, Seaton argued that discovery relating

to the funding agreement was not relevant to any claim or defense in this action,

explaining that application of the non-cumulation clause does not depend upon discovery in this action and plaintiffs' motivation for choosing the 1976-77 insurance policies to proceed against "is irrelevant as are any collateral agreements they may have entered into." Dkt. #223-14.

By letter dated August 17, 2023, Continental acknowledged that the dispute regarding its request for an unredacted copy of the Funding Agreement had been resolved. Dkt. #222, p.2.

Lamarok Insurance Company was dismissed from this action without prejudice on January 24, 2024 due to an Order of Liquidation entered by the Commonwealth Court of Pennsylvania. Dkt. #233.

## DISCUSSION AND ANALYSIS

As amended in 2015, Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The Advisory Committee Notes to the 2015 Amendment clarifies that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."

-12-

Pursuant to Fed. R. Civ. P. 26(c)(1), for good cause, the court may issue an order to protect a party from whom discovery is sought from annoyance, embarrassment, oppression, or undue burden or expense, including an order, *inter alia*, limiting the scope of disclosure. Courts have broad discretion to determine when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 26 (1984). "Protection against unnecessary discovery is discretionary with the trial court and the court's ruling will be reversed only on a clear showing of abuse of discretion." *Robertson v. National Basketball Ass'n*, 622 F.2d 34, 35-36 (2d Cir. 1980).

On a motion to compel discovery, the movant bears the burden of demonstrating that the information sought is relevant. *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, 347 F.R.D. 1, 9 (S.D.N.Y. 2024). Once relevance has been demonstrated, it is up to the responding party to justify curtailing discovery. *Id.* A party invoking a privilege bears the burden of establishing its applicability. *Id.* "The protection of documents covered by the attorney-client privilege or the work product doctrine constitutes "good cause" for the issuance of a protective order." *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40, 2017 WL 11641957, at *2 (S.D.N.Y. Aug. 14, 2017).

**Motivation for Funding Agreement**

Continental argues that plaintiffs should not be permitted to control what is disclosed about their negotiations with Seaton's affiliate. Dkt. #221, p.6. More

-13-

specifically, Continental argues that it is entitled to explore the negotiations that resulted in payment from Seaton's affiliate to plaintiffs and whether such payment was conditioned upon plaintiffs dismissing their claims against Seaton. Dkt. #239, pp.7-8. Continental argues that such information is relevant to demonstrate "any collusion, unclean hands, and any other impropriety that undermine Plaintiffs' proffered and disputed allocation methodologies which shift their focus to the 1976-1977 policy year." Dkt. #217-1, p.18.

Plaintiffs argue that there is no basis to require plaintiffs to provide Continental with discovery that would reveal strategic decisions behind plaintiffs' decision to enter into the Funding Agreement with Enstar or to settle with Harper and Assicurazioni Generali and challenge Continental's suggestion of wrongdoing, stating:

> Attorneys representing Defendant Seaton negotiated a Funding Agreement between Seaton's affiliate, Enstar Holdings, and counsel for the Plaintiffs. As a contractual condition for repayment of the funds, the Plaintiffs agreed to exercise their option to pursue . . . the 1976 coverage tower rather than any other tower. Nonetheless, the Plaintiffs were free to choose to pick and spike the 1976 tower regardless of and without the benefit of any funding agreement.

Dkt. #219-2, p.11 &13.

Collusion is defined as "[a]n agreement to defraud another or to obtain something forbidden by law." *In re Brosnahan*, 376 B.R. 387, 389 (W.D.N.Y. 2007), *quoting* Black's Law Dictionary (7th ed. 1999); *See also In re N.Y. Trap Rock Corp*., 42 F.3d 747, 752 (2d Cir. 1994) ("Collusion is defined as 'secret cooperation for a fraudulent or deceitful purpose.'"), *quoting Webster's Third New Int'l Dictionary* (1976

-14-

ed.). This concept has no application to the instant case given that plaintiffs are seeking to enforce state court judgments and this Court has determined that plaintiffs may recover their judgments from the excess insurers in accordance with the terms of the insurance policies. Dkt. #174, p.8. Given that the Seaton, Continental, and London Companies' excess policies in effect during the period that plaintiffs' sustained injury all contain substantively similar prior insurance and non cumulation of liability provisions warranting vertical exhaustion, the decision as to which applicable policy period plaintiffs would choose to pursue is within plaintiffs' discretion. *See Viking Pump*, 27 N.Y.3d 244 (2016). There is nothing nefarious about Continental's suspicion that Seaton persuaded plaintiffs to pursue a policy period which would not directly target Seaton's excess insurance policies by negotiating the Funding Agreement between plaintiffs and a company affiliated with Seaton; whether or not that was the motivation[3] for plaintiffs' choice of the 1976 policy is irrelevant. *See Benitez v. Lopez*, 17-CV-3827, 2019 WL 1578167, at *2 (E.D.N.Y. March 14, 2019) (A defendant is not entitled to know why adverse party chooses to make certain strategic decisions).

### Characterization/Effect of Funding Agreement

Continental argues that it is entitled to explore the effect of the purported Funding Agreement upon its allocation-related defenses. Dkt. #221, pp.9-10. More

---

[3] Seaton suggests that plaintiffs chose to pursue the 1976-1977 insurance policies rather than a year in which Seaton provided coverage because Seaton entered into its buyback agreement with Hedman before receiving notice of any of the four claims at issue in this litigation and therefore has the strongest appellate arguments as to of all of the defendant insurance carriers with respect to the Court's decision that the insurance companies' transfer of insurance funds to Hedman constituted fraudulent conveyances. Dkt. #227-3, p.6.

specifically, Continental disputes whether the Funding Agreement is a true litigation funding agreement and argues that plaintiffs' claims against the remaining defendants are impacted by its characterization as such. Dkt. #223-1, p.16. For example, Continental argues that plaintiffs have collected on claims from other insurers for the same judgments they seek to collect from Continental without accounting for such recovery in their purported allocation to Continental. Dkt. #221, p.10. Continental challenges plaintiffs' ability to "continue to seek satisfaction of their judgments from Continental based on an allocation of their full judgment amounts . . . despite having received funds in satisfaction of those same judgments." Dkt. #221, p.11.

Plaintiffs respond that "the Funding Agreement, its creation, and the Plaintiffs' understanding of it have nothing to do with Continental's allocation-related defenses" and that their "inquiry into the Funding Agreement is improperly directed to the question of [p]laintiffs' litigation strategy and their motivations." Dkt. #219, p.3. Despite the fact that litigation funding agreements are not generally discoverable due to lack of relevance and the attorney-client and work product privileges, plaintiffs note that they have produced the Funding Agreement redacted only with respect to the division of any amounts that may be recovered in excess of the amount funded by Enstar. Dkt. #219-2, pp.3-8. Given that the Funding Agreement requires repayment of 100% of the amount funded by Enstar, plaintiffs argue that their decision to obtain some recovery now does not convert that sum of money into a settlement affecting Continental's alleged defenses to these actions. Dkt. #219-2, p.8.

Seaton argues that the communications, terms and negotiation of the Funding Agreement are irrelevant to the interpretation of Continental's insurance policy and have no bearing upon other available insurance or prior recoveries from such policies. Dkt. #227-3, p.16. Moreover, Seaton argues that the Funding Agreement "speaks for itself" and that its terms are not affected by the negotiations or communications that produced it. Dkt. #227-3, p.16.

Litigation funding agreements are generally not discoverable, unless shown to be material and necessary to a party's claim or defense. *Smartmatic USA Corp. v. Fox Corp.,* No. 151136/2021, 2023 WL 2626882, at *1-2 (N.Y. Sup. Ct. N.Y. Cty. March 24, 2023) (citing state and federal court cases); *Fulton v. Foley*, 17-CV-8696, 2019 WL 6609298, at *2 (N.D. Ill. E.D. Dec. 5, 2019) ("As a general matter, courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case.") (collecting cases). Conversely, settlement agreements and negotiations are not protected from disclosure as privileged and courts routinely permit the discovery of settlement agreements for the purpose of demonstrating potential bias or prejudice. *Government Emps. Ins. Co. v. Cean*, 19-CV-2363, 2019 WL 6253804, at *1 & 2 (E.D.N.Y. Nov. 12, 2020).

Whether or not the Funding Agreement constitutes a settlement that should reduce the amounts that other insurers may be required to pay in order to satisfy plaintiffs' judgments is understandably a major point of disagreement at this juncture in

-17-

the proceedings. However, the Court is not persuaded that discovery into the negotiations that produced the Funding Agreement are relevant to resolving that question because the legal effect of the Funding Agreement will be determined based upon its terms regardless of the parties' motivations. Thus, while the Court deems the Funding Agreement relevant to Continental's ability to assess its effect, if any, upon plaintiffs' efforts to enforce their judgments against Continental, plaintiffs' disclosure of the Funding Agreement is sufficient for that purpose.

### Discovery of Payments to Plaintiffs

Continental argues that it is beyond dispute that information supporting plaintiffs' insurance claims – including amounts collected, received, or sought from any other entity for the same claim – is relevant to plaintiffs' claims for allocation of insurance coverage. Dkt. #221, p.5. Continental emphasizes that it is "entitled to any and all information concerning amounts [p]laintiffs have claimed, received, and/or stand to receive with respect to the judgment amounts they are simultaneously seeking to recover from Continental." Dkt. #221, p.10. Continental argues that this discovery is critical to ensure that plaintiffs do not recover twice. Dkt. #221, p.11. To the extent that Seaton has withheld any documents or information sought by Continental on the grounds of privilege, Continental argues that Seaton should be required to provide a privilege log so that Continental can assess Seaton's assertion. Dkt. #221-1, pp.16-17. Continental asserts that "[t]here is objectively no privilege between [p]laintiffs and Enstar, or [p]laintiffs and Seaton." Dkt. #221, p.12 & Dkt. #239, p.9.

Plaintiffs respond that, in addition to disclosing the Funding Agreement, they have disclosed the allocation of the settlement from Harper and Generali among the plaintiffs and that these settlements were repaid to Enstar in accordance with the Funding Agreement. Dkt. #219-2, p.10.

Seaton argues that because evidence extrinsic to the Funding Agreement is not relevant, there is no obligation to provide a privilege log with respect to any such communications. Dkt. #227-3, p.17. Seaton notes that any communication with its counsel upon receiving Continental's discovery requests is clearly privileged and argues that logging them would be unnecessarily burdensome. Dkt. #227-13, p.17.

Plaintiffs have disclosed amounts they have received under the Funding Agreement and from other sources, such as the settlement with Harper and Assicurazioni Generali. Notwithstanding its objections, Seaton has disclosed that "there were no 'amounts paid to [plaintiffs] on or behalf of Seaton'" (Dkt. #223-11, pp.9-11), and that it was "not aware of any money paid by or on behalf of Seaton to any of the [p]laintiffs in this case" or "relating . . . to the Seaton policies;" was not aware of any "payments and/or commitments to pay that have eroded or will erode the limits of the Seaton policies;" and "had not entered into any . . . agreements with [p]laintiffs" concerning the judgments against Hedman. Dkt. #223-12, pp.6-9. In light of these representations, Continental's motion to compel is denied as moot.

**Deposition Testimony from Plaintiffs**

Continental argues that it is "axiomatic that [p]laintiffs are required to provide testimony concerning the damages they seek from Continental in this case, and the factual bases to support their claims that money judgments should be entered against Continental. Dkt. #217-1, p.24. Continental specifically seeks deposition testimony from plaintiffs regarding: (1) any and all amounts they have received in connection with the underlying actions and the judgments they are seeking to enforce; (2) the factual circumstances surrounding the execution of the Funding Agreement; (3) how much they have received to date pursuant to the Funding Agreement; (4) how much they will receive in the future pursuant to the Funding Agreement; (5) their understanding of their agreement with Harper and Generali and how it relates to the Funding agreement; and (6) plaintiffs understanding of how the settlement agreement with Harper and Assicurazioni Generali relates to the Funding Agreement and impacts their claims against Continental. Dkt. #217-1, pp.24-25.

Plaintiffs argue that the Court "should not allow Continental to use the vehicle of a deposition to question the [p]laintiffs about their litigation or settlement strategy, while at the same time attempting to sow distrust between clients and their lawyers." Dkt. #219-2, p.17. Finally, plaintiffs state that communications between plaintiffs and their counsel regarding the nature and meaning of the Funding Agreement are privileged and that their understanding of the Funding Agreement "stems solely from communications that occurred entirely within the attorney-client relationship." Dkt. #219-2, p.7.

Plaintiffs' understanding of how their attorneys are attempting to enforce the judgments obtained in state court are irrelevant to Continental's assessment of the effect of the Funding Agreement, which, as set forth above, will be determined based upon its terms. Moreover, plaintiffs have disclosed amounts they have received under the Funding Agreement and from other sources, such as the settlement with Harper and Assicurazioni Generali. Questioning plaintiffs regarding these topics would obviously necessitate disclosure of communications between plaintiffs and their attorneys, which are protected. Accordingly, Continental's motion to compel plaintiffs' depositions is denied.

### Deposition Testimony from Seaton

Continental argues that it is entitled to depose a representative of Seaton "regarding what it does or does not know regarding its own records, communications and knowledge of the circumstances surrounding the Funding Agreement," including, for example, any collateral agreements that may have been reached. Dkt. #223-1, p.18.

Seaton responds that: (1) plaintiffs have moved to dismiss their claims against Seaton; (2) Seaton consents to that motion; (3) Continental has no claims against Seaton; (4) Seaton is not a party to the Funding Agreement which is the subject of the requested discovery; and (5) Seaton provided Continental with the only arguably relevant information in its possession, *to wit*, that there has been no erosion of the Seaton policy limits due to payments made to plaintiffs. Dkt. #227-3, p.5.

Given that the legal effect of the Funding Agreement will be determined based upon its terms regardless of the parties' motivations and intent, and given Seaton's denial that it made any payment to or for the benefit of plaintiffs, the Court denies Continental's motion to compel the deposition of a representative of Seaton.

## **CONCLUSION**

For the reasons set forth above, Continental's motions to compel the production of documents and privilege logs, as well as deposition testimony, from plaintiffs (14-CV-585 at Dkt. #217; 14-CV-1093 at Dkt. #128; 15-CV-177 at Dkt. #122; and 16-CV-89 at Dkt. #94), are denied; Continental's motions to compel production of a privilege log and deposition testimony from Seaton (14-CV-585 at Dkt. #223; 14-CV-1093 at Dkt. #134; 15-CV-177 at Dkt. #128; and 16-CV-89 at Dkt. #100), are denied; and Seaton's cross motions for a protective order (14-CV-585 at Dkt. #227; 14-CV-1093 at Dkt. #138; 15-CV-177 at Dkt. #132; and 16-CV-89 at Dkt. #104), are granted.

**SO ORDERED.**

DATED:     Buffalo, New York
           January 23, 2025

                                    s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

-22-